Judge Rothstein

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT F. KENNEDY, JR., a citizen of New York; JOSEPH MERCOLA, M.D., a citizen of Florida; RONALD CUMMINS, a citizen of Minnesota; and CHELSEA GREEN PUBLISHING, INC., a Vermont Corporation,

     Plaintiffs,

  v.

U.S. Senator ELIZABETH WARREN,

     Defendant.

CASE NO.  C21-1508BJR

**NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF CROSS-MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

This memorandum sets forth the bases for Defendant U.S. Senator Elizabeth Warren's opposition to Plaintiffs' motion for a preliminary injunction against her in her official capacity and for Defendant Warren's cross-motions for dismissal of the claims asserted against her in her official capacity for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P., or, in the alternative, for summary judgment on those claims pursuant to Rule 56(c), Fed. R. Civ. P.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 1
  (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

**NOTICE OF MOTION**

Defendant U.S. Senator Elizabeth Warren, in her official capacity, through her attorneys, Nicholas W. Brown, United States Attorney, and Brian C. Kipnis, Assistant United States Attorney, for the Western District of Washington, hereby move this Court pursuant to Rules 12(b)(1) and 56(c) of the Federal Rules of Civil Procedure for an order dismissing the claims asserted against her in her official capacity for lack of subject matter jurisdiction or, in the alternative, for summary judgment on those same claims because no genuine issues of material fact are presented and Defendant Warren is entitled to judgment as a matter of law on those claims.  This motion is made and based on the pleadings and papers filed herein, and such oral argument as the Court may entertain.

**CERTIFICATION OF CONFERRAL**

The undersigned certifies that on January 7, 2022, counsel for the parties to this lawsuit met by telephone and discussed whether any agreement could be reached to obviate the need for this Court to adjudicate Defendant Warren's intended motion to dismiss, in its entirety or in part.  Aside from a question of service of process, which was amicably resolved, the parties concluded after a discussion of the issues that Defendant Warren intended to present to the Court in her motion that no agreement could be reached that would obviate the need for the Court to decide all or only some of those issues.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiffs' action claims that their rights under the First Amendment were violated by a letter sent by Defendant, the Honorable U.S. Senator Elizabeth Warren, to the Chief Executive Officer of Amazon, Inc., identifying instances in which Amazon's website seemed to be unduly promoting sources of vaccine misinformation in response to relatively general search requests for information about COVID-19 and the ongoing pandemic.  Among the several examples of this phenomenon mentioned in Defendant Warren's letter were search results that prominently showcased Plaintiffs' book.

Defendant Warren's letter requests that Amazon review its algorithms, make any appropriate

corrections, and respond to specific inquiries set forth in her letter.  It makes no request of Amazon in regard to Plaintiffs' book.  Specifically, Defendant Warren's letter does not call upon Amazon to stop selling Plaintiffs' book on its website.  She also does not direct Amazon to stop promoting Plaintiffs' book on its website although she criticizes the business practice of promoting books like Plaintiffs' book in response to search requests seeking general information about, *e.g.*, COVID-19. Most importantly, she does not threaten to take any legal action or to seek to impose any consequences on Amazon for any action or inaction on Amazon's part.  Nevertheless, Plaintiffs incorrectly characterize Defendant Warren's letter as a "prior restraint" on their free speech, even though no action taken by Defendant Warren, either directly or indirectly, precludes Plaintiffs from speaking or, specifically, from selling their book on Amazon's website or elsewhere.

Given Plaintiffs' insistence that *their* First Amendment rights be respected, it is indeed ironic that Plaintiffs ask this Court to issue a preliminary injunction that would itself restrain Defendant Warren from speaking out in her capacity as a U.S. Senator.  Specifically, Plaintiffs' overbroad proposed injunction seeks to limit or prevent Defendant Warren from acting on behalf of the citizens of the state she represents, and all citizens of the United States, on a subject of significant importance, namely, the worrisome proliferation of blatant misinformation about the vaccines presently available to prevent and/or minimize the effects of infection by COVID-19.  Plaintiffs also ask this Court to compel Defendant Warren to speak against her will in a manner apparently more pleasing to Plaintiffs by forcing her to issue an official retraction of her letter.[1]

As noted previously, this memorandum supports Defendant Warren's opposition to Plaintiffs' motion for a preliminary injunction, her cross-motion to dismiss the official capacity claims asserted against her for lack of subject matter jurisdiction, and her alternative cross-motion for summary judgment on those same claims pursuant to Rule 56(c), Fed. R. Civ. P.  Defendant Warren's motion to dismiss the claims alleged against her in her official capacity constitutes both a

---

1  Plaintiffs seek to enjoin Defendant Warren from "sending further letters seeking to suppress constitutionally protected speech, including with specific regard to *The Truth About COVID-19: Exposing The Great Reset, Lockdowns, Vaccine Passports, and the New Normal*."  Plaintiffs also seek an order compelling Defendant Warren to "publish a public retraction of the September 7, 2021, letter to Amazon, Inc."  Dkt. # 7-1, p. 2.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 3
 (Case No. C21-1508BJR)

facial and factual attack on the subject matter jurisdiction of this Court to hear those claims. Defendant Warren's alternative cross-motion for summary judgment is based on the contention that there are no genuine issues of material fact and that Defendant Warren is entitled to judgment on those claims as a matter of law.

The opposition to Plaintiffs' motion for a preliminary injunction and Defendant's cross-motions rest on substantially the same grounds. First, Plaintiffs lack standing for their claim that Defendant Warren has violated their rights under the First Amendment. Second, Plaintiffs have failed to identify an applicable statutory waiver of sovereign immunity for any of their claims. Third, as a sitting U.S. Senator acting within her legitimate legislative sphere, Defendant Warren is immune from suit on the grounds alleged by virtue of the speech or debate clause of Article 1, section 6, of the U.S. Constitution. Fourth, on the merits, Defendant Warren's letter does not constitute a violation of Plaintiffs' First Amendment rights as a matter of law or of any right they may have under the Privileges and Immunities Clause of the Constitution. Fifth, Plaintiffs' proposed injunction is overbroad and not consistent with the public interest.

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be denied and Defendant Warren's cross-motion to dismiss should be granted with prejudice. In the alternative, summary judgment should be awarded to Defendant Warren pursuant to Rule 56(c), Fed. R. Civ. P.

## STATEMENT OF FACTS

A. Plaintiffs' Claims.

The sole Defendant named in Plaintiffs' complaint is the Honorable Elizabeth Warren, the senior United States Senator for the State of Massachusetts. Dkt. # 1, ¶ 28. Plaintiffs' complaint alleges that, in a letter dated September 7, 2021, addressed to the Chief Executive Officer of Amazon.com, Inc. ("Amazon"), Defendant falsely disparaged a book entitled *The Truth About COVID-19: Exposing the Great Reset, Lockdowns, Vaccine Passports, and the New Normal*

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 4
(Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

("book").[2]  According to Plaintiffs, Defendant Warren falsely characterized their book as containing "vaccine misinformation."  *See, e.g., id*. at ¶¶ 7, 8, 12, 13.  Plaintiffs' complaint denies that their book imparts such misinformation.  *See, e.g., id*. at ¶¶ 37-49.

Nevertheless, Plaintiffs allege that the truth or falsity of Defendant's characterization of the book is irrelevant because, regardless, the book constitutes "constitutionally protected speech."  *See, e.g., id*. at ¶¶ 35, 38, 56.  Accordingly, Plaintiffs complain that certain of Defendant Warren's actions amounted to a violation of their First Amendment rights.  Specifically, Plaintiffs claim that Defendant violated their rights under the First Amendment by sending the letter to Amazon, by disparaging the book, by allegedly "threaten[ing]" Amazon with "adverse legal consequences" for continuing to sell and promote the book on its website, and by issuing a press release on September 8, 2021, publicizing the letter, linking to the letter, and calling on Amazon to "take aggressive action to stamp out COVID-19 misinformation."  *Id*. at ¶¶ 7, 14, 19.  According to Plaintiffs, Defendant Warren's actions amount to a wrongful effort to suppress sales of their book in violation of the First Amendment.  *Id*. at ¶¶ 7, 10, 11, 19.

Plaintiffs further allege that Amazon and other third-party booksellers have taken certain actions that have been detrimental to sales of their book.  *Id*. at ¶¶ 84-89.  However, Plaintiffs have not proffered any evidence that any bookseller has taken any action that Plaintiffs perceive to be detrimental to sales of their book because of Defendant Warren's letter or any of Defendant Warren's actions.  Instead, they allege "[o]n information and belief" that the letter has "caused booksellers to stop selling and/or to take other adverse action against [the] book."  *Id*. at ¶ 3.[3]

As to Amazon, declarant Margo Baldwin, whose testimony provides the *only* evidence offered by Plaintiffs in support of their preliminary injunction motion, does not testify that she has any personal knowledge that Amazon's actions, or any single one of them, was caused by Defendant

---

2  Plaintiffs are all associated with the book in one way or another.  Plaintiff Kennedy is alleged to have written the forward to the book.  Dkt. # 1 at ¶ 32.  Plaintiffs Mercola and Cummins are alleged to have "co-authored" the book.  *Id*. at ¶ 31.  Plaintiff Chelsea Green Publishing, Inc., is alleged to be the publisher of the book.  *Id*. at ¶ 30.

3  As set forth below, Plaintiffs affirmatively allege in their unverified complaint that Barnes & Noble temporarily ceased selling their book because of Defendant Warren's actions, but no evidence presented to this Court bears out their allegation.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 5
 (Case No. C21-1508BJR)

Warren's actions generally, or the Amazon letter specifically.  *See* Dkt. # 8.[4]  On the one hand, Ms. Baldwin testifies to certain actions supposedly taken by Amazon, which she characterizes as "covertly demoting, downgrading, or otherwise suppressing" their book.  *Id.* at ¶¶ 39-42.  On the other hand, Ms. Baldwin testifies that "[i]t is impossible for Plaintiffs to know with certainty whether [these actions are occurring] as a result of Warren's and Schiff's letters . . ."  *Id.* at 39.[5]

Why it is "impossible" for Plaintiffs to procure this evidence through cooperation or compelled testimony of knowledgeable Amazon employees is not disclosed in Ms. Baldwin's testimony.  She apparently views her conclusion to be self-evident.  Notably, Ms. Baldwin does *not* testify that Plaintiffs' book is presently not discoverable by a relevant search on Amazon's website.  Also, Ms. Baldwin does not testify that Plaintiffs' book is unavailable for purchase on Amazon's platform or that it has ever been unavailable for purchase on Amazon's platform since the date the Amazon letter was published.

As to Barnes & Noble, Plaintiffs allege in their complaint that "[o]n September 10, 2021, as a direct result of Senator Warren's letter, a major national bookseller chain, Barnes & Noble, notified the publisher of *The Truth About COVID-19* by email that it would no longer sell the work as an e-book."  Dkt. # 1, ¶ 15.  However, Plaintiffs do not provide any evidence to support this averment and, indeed, their own declarant tacitly refutes this assertion.  Plaintiffs proffer a copy of the message received from Barnes & Noble advising their publisher of the bookseller's decision to

---

4 One of Plaintiffs' attorneys of record, Nathan J. Arnold, has also submitted a declaration in support of Plaintiffs' motion for a preliminary injunction.  Dkt. # 9.  However, Mr. Arnold's declaration simply purports to authenticate a copy of the foreword to Plaintiffs' book.  It does not provide any evidence as to why any bookseller may have taken any action concerning Plaintiffs' book.

5 The reference to "Schiff," which is presumably to the Honorable Adam B. Schiff, a member of the U.S. House of Representatives from California, is curious.  There is no other reference to "Schiff," in Ms. Baldwin's declaration.  The Court may take judicial notice of a decision of the United States District Court for the District of Columbia in *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505 (D.D.C. 2021), in which the plaintiffs in that case, on essentially the same grounds as are asserted here, sued Congressman Schiff in part because of a letter he sent to the Chief Executive Officer of Amazon, Inc. on March 1, 2019.  Congressman Schiff encouraged Amazon to use its platform to prevent inaccurate information on vaccines and requested information about what actions Amazon was taking to address misinformation about vaccines on its platform.  *Id.* at 510.  Ms. Baldwin's testimony inadvertently discloses her belief that the actions taken by Amazon which she decries could have instead resulted, in whole or in part, from Congressman Schiff's letter.  Plaintiffs lack evidence on this point in either case.  Notably, the suit against Congressman Schiff was dismissed for lack of standing and because of the immunity extended to members of Congress under the Constitution's Speech or Debate Clause.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 6
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

discontinue sales of Plaintiffs' book.  Dkt. # 8, Exh. B.  However, the message makes absolutely no mention of either Defendant Warren or the letter she sent to Amazon, much less does it identify any relationship between any of Defendant Warren's actions and the bookseller's decision to (temporarily) suspend sales of Plaintiffs' book.  *Id.*  Further, Ms. Baldwin, does not testify that she has any personal knowledge of any connection between Barnes & Noble's decision, or the decision of any other bookseller for that matter, and the actions of Defendant Warren that they allege were wrongful.  *Id*. at ¶¶ 38, 44.  Consequently, the record before the Court is devoid of such evidence.

Based on these allegations, Plaintiffs assert as a cause of action that they are entitled to declaratory and injunctive relief against Defendant Warren in her official capacity under the First Amendment.  *Id*. at ¶¶ 90-98.  Plaintiffs appear to be confining their demand for monetary damages to their individual capacity claims against Defendant Warren, which are based on the same facts.  *Id.* at ¶ 98.[6]  Plaintiffs also assert that the same facts give rise to a claim under the "privileges and immunities" clause of Article IV, Section 2 of the Constitution.  *Id.* at ¶¶ 99-110.  It is not clear whether Plaintiffs are asserting this cause of action against Defendant in just her individual capacity alone, her official capacity alone, or in both capacities.[7]

Although Plaintiffs purport to sue the Defendant in her official capacity, nowhere does the Complaint allege that any specific statute provides a waiver of sovereign immunity that affords the Court subject matter jurisdiction to hear any of the claims asserted against Defendant in her official capacity.

B.  The Letter.

Plaintiffs' lawsuit is primarily based upon Defendant Warren's letter dated September 7, 2021, that is addressed to Andy Jassy, Chief Executive Officer, Amazon.com, Inc.  Dkt. # 8, Exh. A.

---

6  Paragraph 98 of the Complaint states:

> Accordingly, Plaintiffs are entitled to immediate declaratory and injunctive relief, as well as such other relief, *including damages (against Defendant in her personal capacity)* and attorneys' fees, as the Court judges to be proper.

(Emphasis added.)

7  Plaintiffs' motion for a preliminary injunction does not rely on their Privileges and Immunities clause claim, which, as set forth in this memorandum, is meritless in any event.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 7
 (Case No. C21-1508BJR)

The letter is on official United States Senate stationary and is signed by the Defendant as "United States Senator." *Id.* In the letter, Defendant states her concern that Amazon is peddling misinformation about COVID-19 vaccines and treatments through its search and "Best Seller" algorithms. *Id.* at 17. Defendant Warren's letter states her belief that these actions together with others she identifies suggest a pattern and practice of misbehavior whereby "Amazon is either unwilling or unable to modify its business practices to prevent the spread of falsehoods or the sale of inappropriate products—an unethical, unacceptable, and potentially unlawful course of action . . ." *Id.* at 16-17. Nowhere in the letter does Defendant Warren's letter suggest that she is herself contemplating taking any adverse action against Amazon despite characterizing Amazon's business practices in this manner.

Defendant Warren's letter stresses the importance of providing "accurate information about COVID-19 prevention and treatment—and about the safety and effectiveness of vaccines in particular" to the public in order to save lives and bring the pandemic caused by COVID-19's spread to an end. *Id.* The letter indicates Defendant Warren's belief, based on various sources and materials she references in the letter, that the propagation of vaccine misinformation is an obstacle to those goals and that the business practices of technology companies like Amazon have facilitated the spread of such misinformation. *Id.*

The letter then turns to the circumstances that have motivated Defendant Warren to send her letter. Defendant Warren explains that she has concluded that Amazon's algorithms have effectively promoted the distribution of vaccine misinformation on its website. *Id.* at 11. She reports that her staff conducted a series of sample searches on Amazon's website using relatively generic terms such as "COVID-19" and discovered that those searches consistently yielded as top results "highly-ranked and favorably-tagged books based on falsehoods about COVID-19 vaccines and cures." *Id.* The letter uses Plaintiffs' book to illustrate the problem. Defendant notes, citing sources, that one of the authors of the book, Plaintiff Mercola, has been identified as "the most influential spreader of coronavirus misinformation online," and notes that he is seemingly using his book to drive sales of certain vitamin supplements to the public, which he claims have a preventative effect when it comes

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 8
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

to COVID-19 infection, despite the fact that he has received a letter from the U.S. Food and Drug Administration (FDA) instructing him to stop selling these supplements "for the unapproved and unauthorized treatment of COVID-19." *Id.* at 12-13. Defendant Warren also notes, again citing sources, that Plaintiff Mercola has been identified as "one of the 'Disinformation Dozen,' a group responsible for 65% of anti-vaccine content on Facebook and Twitter" and has been the subject of multiple investigations, including a false advertising investigation leading to a $2.95 million consumer settlement. *Id.*

Plaintiffs' book is not the only source of vaccine misinformation identified by Defendant Warren's letter that Amazon's search engine appeared to inordinately promote in response to general COVID-19 inquiries. Her letter provides a number of other examples of this phenomenon. *Id.* at 13.

Defendant Warren's letter notes that other technology companies have instituted measure to prevent or minimize propagation of vaccine misinformation on their platforms and it notes that Amazon has itself acted in the past to "remove books trafficking in misinformation from its platform," although noting that Amazon has been less than completely transparent with regard to its policies in such matters. *Id.*

Finally, Defendant Warren's letter makes the following request of Amazon:

> Given the seriousness of this issue, I ask that you perform an immediate review of Amazon's algorithms and, within 14 days, provide both a public report on the extent to which Amazon's algorithms are directing consumers to books and other products containing COVID-19 misinformation and a plan to modify these algorithms so that they no longer do so. In order to fully understand Amazon's role in facilitating misinformation about COVID-19 and its actions to address the issue, I also request responses to the following questions by September 22, 2021:
>
> 1. What are Amazon's existing policies regarding the listing, promotion, and sale of books and other products containing COVID-19 misinformation on its platform?
>
> 2. What specific actions has Amazon taken to address the spread of COVID-19 misinformation via search results or other uses of its platform?
>
> 3. Why do Amazon's search algorithms prominently list books with COVID-19 misinformation?
>
> 4. Why do books with COVID-19 misinformation receive "Best Seller" tags from Amazon? What criteria does Amazon use to award these tags, and what steps does Amazon take to highlight products containing the tag?

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 9
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    *Id.* at 14-15.

2        Defendant Warren's letter does not make any other request of Amazon.  Specifically,

3    Defendant does not instruct or direct Amazon to take any action in regard to Plaintiffs' book.  Also,

4    Defendant does not instruct Amazon to stop selling Plaintiffs' book on its platform or otherwise to

5    take any action to "suppress sales" of Plaintiffs' book.  More importantly, Defendant does not

6    threaten to take any particular action against Amazon if Amazon fails to take any specific measures

7    *vis a vis* Plaintiffs' book, or for any other reason.  The only requests made of Amazon are to conduct

8    a review of the manner in which it search algorithms serve to unduly promote vaccine

9    misinformation in response to relatively generic searches for information concerning COVID-19,

10   develop a plan to modify these algorithms so that they no longer do so, and publicly respond to her

11   enumerated inquiries so that "Amazon's role in facilitating misinformation about COVID-19 and its

12   actions to address the issue" can be "fully underst[ood]."

13       C.  The Motion for a Preliminary Injunction

14       On December 9, 2021, roughly three months after the date of the letter in question, Plaintiffs

15   filed a motion for a preliminary injunction against Defendant Warren only on those claims asserted

16   against her in her official capacity.  Dkt. # 7.  Plaintiffs' motion incorporates the same basic facts

17   that are alleged in their complaint.  *Id.*  However, their motion does not identify any specific

18   irreparable harm that that they will suffer if preliminary relief is not granted, maintaining instead that

19   irreparable harm is established "[a]s a matter of law."  Dkt. # 7, p. 17, *ll.* 23-25.  As relief, Plaintiffs

20   seek an order broadly compelling Defendant Warren indefinitely to refrain from "sending further

21   letters seeking to suppress constitutionally protected speech, including with specific regard to *The*

22   *Truth About COVID-19: Exposing the Great Reset, Lockdowns, Vaccine Passports, and the New*

23   *Normal.*"  Dkt. # 7-1, p. 2, ¶ 2.  Further, Plaintiffs ask the Court to compel Defendant "to publish a

24   public retraction of the September 7, 2021, letter to Amazon, Inc."  *Id*. at ¶ 3.  Finally, Plaintiffs ask

25   the Court to order the Defendant "to provide by hand delivery or overnight delivery a copy of said

26   public retraction to all persons or entities that . . . received a copy of the September 7, 2021, letter to

27   Amazon, Inc. from any of the enjoined parties."  *Id*.

28   NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
     AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
     INJUNCTION, [etc.] - 10
      (Case No. C21-1508BJR)

### STANDARDS OF REVIEW

*i. Motion to Dismiss for Lack of Subject Matter Jurisdiction:*

"A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

In a facial attack, the Court takes "the allegations in the plaintiff's complaint as true." *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).  In a factual attack under Rule 12(b)(1), courts "need not presume the truthfulness of the plaintiffs' allegations."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  Instead, a district court may look beyond "the face of the pleadings, [and] review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Defendant Warren's motion to dismiss the claims alleged against her in her official capacity for lack of subject matter jurisdiction attacks the complaint on both facial and factual grounds. Defendants move on factual grounds to dismiss Plaintiffs' claim for relief on First Amendment grounds because, as demonstrated factually, they have failed to establish that they have standing to bring such a claim.  Specifically, Plaintiffs have failed to proffer any evidence that the harm they allege is fairly traceable to defendant Warren's actions.

Defendant Warren attacks facially Plaintiffs' claims for relief against her in her official capacity because Plaintiffs' have failed to identify any statutory waiver of sovereign immunity that permits this Court to exercise subject matter jurisdiction over their claims.

Lastly, Defendant Warren makes a facial attack on Plaintiffs' claims because as a member of Congress, Defendant Warren is immune from suit pursuant to the Speech or Debate clause of Article 1, section 6, of the U.S. Constitution.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 11
 (Case No. C21-1508BJR)

*ii. Preliminary Injunction*

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (italics in original); see also *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).  To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 24–25 (2008).

The Ninth Circuit has held that its "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*, and this court may still apply that test.  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).  In so ruling, the Ninth Circuit formulated the test as follows:

> [S]erious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.

*Id*. at 1135. "Serious questions" are those that are "substantial, difficult and doubtful, requiring a more thorough investigation."  *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).  Irreparable harm is never presumed and must be shown to be likely and not merely possible. *Alliance for Wild Rockies, supra*, 632 F.3d at 1131.

*iii. Summary Judgment*

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (internal quotation omitted).  A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If there is not, summary judgment is warranted.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 12
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

# ARGUMENT

I.     PLAINTIFFS LACK ARTICLE III STANDING FOR THEIR FIRST AMENDMENT CLAIM AGAINST DEFENDANT WARREN IN HER OFFICIAL CAPACITY

Plaintiffs' claim based on an alleged First Amendment violation by Defendant Warren in her official capacity should be dismissed because they have not demonstrated that they have Article III standing to assert such a claim.  The "threshold issue of standing [is] 'an essential and unchanging part of the case-or-controversy requirement of Article III,'" and must be met for a court's jurisdiction to vest.  *Horne v. Flores*, 557 U.S. 433, 445 (2009) (quoting *Lujan*, 504 U.S. at 560).  To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "[T]he party invoking federal jurisdiction[ ] bears the burden of establishing these elements."  *Id.* at 1547.

Plaintiffs' complaint alleges two basic injuries.  First, Plaintiffs allege that the Amazon letter has induced third-party booksellers to take certain actions that have had a negative impact on the sales of their book and has thereby "curtail[ed] their participation in debate on matters of utmost public importance, namely, response to the COVID-19 pandemic" and "suppress[ed] their right to present and advocate for their point of view."  Dkt. # 1, ¶¶ 102, 104-105.  Second, Plaintiffs assert a "reputational injury, including by a sitting United States Senator's implication that Plaintiffs' research and viewpoints are unworthy of protection under the United States Constitution."  *Id.* at ¶ 103.

Plaintiffs are obligated "to demonstrate standing for each claim [they] seek[ ] to press."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Plaintiffs' second alleged injury asserts a claim in the nature of the tort of defamation.  *Eastwood v. Cascade Broad. Co.*, 106 Wash.2d 466, 471 (1986) (Defamation is concerned with compensating the injured party for damage to reputation).  Assuming for purposes of argument that Plaintiffs have standing to bring a defamation action for *damages* against the United States, there is no subject matter in this Court to hear such a claim for reasons that are discussed later in this

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 13
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

memorandum.  In any event, Defendant Warren does not interpret Plaintiffs' complaint to be seeking an injunction against her in her official capacity on the basis of this claim, and Plaintiffs' motion for a preliminary injunction is based only on supposed suppression of sales of their book and not on alleged injury to their reputations.[8]

As to Plaintiffs' claim that Defendant Warren's letter to Amazon violated their rights under the First Amendment, however, Article III standing is absent.  Assuming that a negative impact on sales is a cognizable injury for purposes of Article III standing and that Plaintiffs can make such a showing, Plaintiffs' complaint rests on the theory that the alleged injuries occurred because of the actions of third parties, *i.e.,* independent booksellers, not presently before the Court.  In other words, the traceability of Plaintiffs' alleged injuries to the actions of Defendant Warren requires Plaintiffs to establish that independent booksellers were motivated to take the actions that they perceive to be injurious to sales of their book because of Defendant Warren's actions.  However, Plaintiffs have no proof that Defendant Warren's letter to Amazon caused Amazon or any other bookseller to take the actions that are the direct source of their claimed injury.

In the case of Barnes & Noble, which is *alleged* to have temporarily ceased sales of Plaintiffs' book because of the Amazon letter, dkt. # 1, ¶ 15, proof of any traceable linkage between the actions of Defendant Warren and the decision of Barnes & Noble to temporarily halt sales of Plaintiffs' book on its platform are non-existent.  Indeed, Plaintiffs' declarant, Margo Baldwin, testifies only that "Barnes & Noble, notified Chelsea Green by email that it would no longer sell *The Truth About COVID-19* work as an e-book . . ."  Dkt. # 8, ¶ 38.  She does not testify that she has any personal knowledge that the Barnes & Noble decision was in any way motivated by Defendant Warren's actions.  Indeed, the copy of the message from Barnes & Noble notifying Chelsea Green of its decision, which Ms. Baldwin attaches to her declaration, Exh. B, makes no mention of Defendant Warren or the Amazon letter whatsoever.

---

8  A claim by Plaintiffs that they are entitled to injunctive relief for such injuries would face an uphill battle.  The usual rule is that "'equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages.'" *San Antonio Cmty. Hosp. v. S. Cal. Dist. Council of Carpenters,* 137 F.3d 1090, 1092 (9th Cir. 1998).

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 14
 (Case No. C21-1508BJR)

Similarly, in the case of Plaintiffs' allegations concerning actions taken by Amazon and "other" booksellers that are alleged to have had a negative impact on sales, Plaintiffs provide no proof of any causal connection between the Amazon letters and any negative action taken by Amazon or any other bookseller.  Indeed, except in the case of Barnes & Noble, Plaintiffs' complaint makes those allegations on "information and belief" alone, dkt. # 1, ¶¶  17, 83, meaning, of course, that they lack a non-speculative basis to support their allegations.[9]  This gap in Plaintiffs' allegations, which are *not* assumed to be true, either for purpose of ruling on a motion to dismiss for lack of subject matter jurisdiction that constitutes a factual attack on the allegations of the complaint, or for determining whether Plaintiffs have established a likelihood of success on the merits for purposes of ruling on Plaintiffs' preliminary injunction motion, is not closed by the Declaration of Margo Baldwin.  Ms. Baldwin essentially concedes that she has no personal knowledge that Amazon has taken any action against Plaintiffs that they perceive to be adverse to them because of Defendant Warren's actions, including her letter.  Dkt. # 8, ¶¶ 39-42.  Further, Plaintiffs provide no evidence of any causal connection between Defendant Warren's activities and any action adversely affecting the sale of Plaintiffs' book by any other bookseller.  *See id.* at ¶¶ 43-44.

Thus, even if Plaintiffs were able to establish a sufficient injury in fact for Article III standing purposes, the Complaint falls far short of properly alleging that Defendant Warren is the cause of any such injury.  To satisfy this essential element of causation, a plaintiff must show that the alleged injury is "fairly traceable to the challenged action of the defendant, *and not the result of the independent action of some third party not before the court.*"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (emphasis added) (alterations omitted) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  "When … a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is

---

9  Allegations based on information and belief are not sufficient to establish that the Court has subject matter jurisdiction.  See *Wagner v. Glob. Plaza USA Inc.*, 2021 WL 3573043, at *1 (M.D. Fla. Apr. 7, 2021) (allegations "[u]pon information and belief" were not sufficient to establish a causal connection between the injury and Defendants' conduct and thus failed to sufficiently allege standing); and see *Blantz v. California Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 926-927 (9th Cir. 2013) (conclusory allegation that is based on "information and belief" alone is not sufficient to state a claim).

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 15
  (Case No. C21-1508BJR)

needed." *Id*. at 562 (noting the "substantially more difficult" burden to establish causation (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984))).

Here, Plaintiffs' claim that Defendant Warren "threatened" Amazon to cease selling books containing content like that found in Plaintiffs' book, thereby causing them injury, without providing any evidence demonstrating that the alleged actions of Amazon or any other third-party were actually taken because of Defendant Warren's fact-finding letter. This attenuated causal chain is precisely the type of speculation about the conduct of unnamed third parties that Article III disallows. See, *e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.") Because Plaintiffs are unable to trace the actions of third parties to the conduct of Defendant Warren, an essential element for Article III standing as to their First Amendment claim is absent.

II.     SUBJECT MATTER JURISDICTION IS LACKING TO HEAR ANY OF
        PLAINTIFFS' CLAIMS BECAUSE THEY DO NOT FALL WITHIN ANY
        STATUTORY WAIVER OF SOVEREIGN IMMUNITY

"Federal courts are courts of limited jurisdiction," possessing jurisdiction only so far as "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 376 (1994). Accordingly, this Court must review Plaintiffs' complaint starting with the presumption that the "cause lies outside this limited jurisdiction." *Id*. To overcome this presumption, Plaintiffs bear the burden of pleading and proving that this Court has subject matter jurisdiction over the claims alleged in their complaint. *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists."). As set forth below, Plaintiffs have failed to meet this burden.

Insofar as Plaintiffs are attempting to assert claims against Defendant Warren in her official capacity, they are in effect bring suit against the Federal Government. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

Where a claim is asserted against the United States, the question of subject matter jurisdiction

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 16
  (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

is inextricably tied to the doctrine of sovereign immunity.  *See Roberts v. United States*, 498 F.2d 520, 525 (9th Cir. 1974), *cert. denied*, 419 U.S. 1070 (1974) (axiomatic that a congressional waiver of sovereign immunity is a prerequisite to any suit brought against the United States).  And any action against the United States begins with the "assumption that no relief is available." *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 644 (9th Cir. 1988). It is, therefore, the burden of any party advancing a claim against the United States to plead and prove that a statutory waiver of sovereign immunity exists.  If the claimant fails to carry that burden, the Court has no jurisdiction to entertain the claim. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984).  Because Plaintiffs' complaint fails to identify any applicable waiver of sovereign immunity that supports their claim against Defendant Warren, they have failed to meet their burden of establishing that subject matter jurisdiction exists.

Plaintiffs' complaint asserts that this Court has subject matter jurisdiction under the statute providing general subject matter jurisdiction to district courts to decide federal questions, 28 U.S.C. § 1331.  Dkt. #1, ¶ 22.  However, 28 U.S.C. § 1331 does not provide the necessary waiver of sovereign immunity. *See Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007).  Plaintiffs' complaint also cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *Id.* The Declaratory Judgment Act also does not waive sovereign immunity.  *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954).  Jurisdiction is also asserted in Plaintiffs' complaint under "*Bivens v. Six Unknown Named Agents of the Federal Bureau of Investigation*, 403 U.S. 388 (1971) (damages)." *Id.*  However, the Supreme Court did not establish a "statutory waiver" of the United States' sovereign immunity in *Bivens,* not could it.  The Court simply recognized that federal employees may under some circumstances be subject to suit in their *individual capacities* for actions alleged to be violative of constitutional rights.  Finally, Plaintiffs' complaint asserts that this Court has subject matter jurisdiction "under the First Amendment of the United States Constitution itself (equitable relief)." *Id.*  However, the First Amendment is not a statutory waiver of sovereign immunity.  See *Leverett v. U.S. Bureau of Health & Hum. Servs.*, No. CIV.A. 99-S-1670, 2003 WL 21770810, at *2 (D. Colo. June 9, 2003).

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 17
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1    Statutory waivers of sovereign immunity that are commonly invoked in civil litigation against

2    the United States do not apply here.   The so-called "Little Tucker Act," 28 U.S.C. § 1346(a)(2),

3    provides a waiver of sovereign immunity allowing district courts to hear monetary claims against the

4    United States not exceeding $10,000 in amount if the claim is on a money mandating provision in the

5    Constitution, a statute, Executive Branch regulation or contract.   *Matsuo v. United States*,

6    416 F. Supp. 2d 982, 988 (D. Haw. 2006).   However, Plaintiffs' claim does not rest upon a money

7    mandating provision.

8    Had Defendant Warren been an officer in an Executive Branch agency, the waiver of

9    sovereign immunity set forth in the judicial review provisions of the Administrative Procedure Act

10   (APA), 5 U.S.C. § 701, *et seq*., would presumably permit Plaintiffs' injunctive relief claim under the

11   First Amendment to proceed.   See *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1172

12   (9th Cir. 2017).   However, Senator Warren is a member of Congress, and the APA does not apply to

13   Congress.   See 5 U.S.C. § 701(b)(1)(A) (excluding Congress from the definition of agency); and see

14   *Green v. U.S. Dep't of Just.*, 392 F. Supp. 3d 68, 100 (D.D.C. 2019) (dismissing APA claim

15   "because the Library of Congress is not an 'agency' as that term is defined in the APA").

16   Lastly, injuries that result from alleged tortious wrongdoing by employees of the United

17   States that are cognizable as torts under the law of the State in which the tort allegedly occurred may

18   be asserted exclusively against the United States under the Federal Tort Claims Act (FTCA),

19   28 U.S.C. §§ 1346(b); 2671-2680 *et seq.*, subject to conditions.   And, as noted before, Plaintiffs'

20   claimed injury to their reputations based on alleged false representations by Defendant Warren

21   sounds in tort, namely, the tort of defamation.   However, a jurisdictional prerequisite to the filing of

22   an action under the FTCA is the presentation of a proper administrative claim to the appropriate

23   federal agency within the statute of limitations and a denial thereof by the agency or the passage of

24   six months without action on the claim.   28 U.S.C. § 2675(a); *Brady v. United States*, 211 F.3d 499,

25   502 (9th Cir. 2000).   Plaintiffs neither allege nor offer any proof that they have complied with this

26   jurisdictional prerequisite.

27

28   NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
     AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
     INJUNCTION, [etc.] - 18
      (Case No. C21-1508BJR)

Because Plaintiffs' complaint does not identify a statutory waiver of sovereign immunity to support any of their claims against Defendant Warren in her official capacity, and none are known to exist, those claims should be dismissed.

III.   **DEFENDANT WARREN IS IMMUNE FROM SUIT ON THE CLAIMS ALLEGED BY PLAINTIFFS UNDER THE SPEECH OR DEBATE CLAUSE OF THE UNITED STATES CONSTITUTION**

The Speech or Debate Clause, U.S. Const., Art. I, § 6, cl. 1, provides absolute immunity for Congress and its Members for any claims predicated on legislative activities.  See *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975).  This absolute immunity extends to all civil actions. *Id*. at 503.  It protects legislators "not only from the consequences of litigation's results but also from the burden of defending themselves."  *Porteous v. Baron*, 729 F. Supp. 2d 158, 163 (D.D.C. 2010) (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967)).  When a suit is predicated on legislative actions, "[t]he Speech or Debate Clause operates as a jurisdictional bar."  *Howard v. Office of the Chief Admin. Officer*, 720 F.3d 939, 941 (D.C. Cir. 2013) (quotation marks omitted).

The Clause covers not only traditional "legislative acts," but also all other activities that fall "within the 'legislative sphere.'"  *Doe v. McMillan*, 412 U.S. 306, 312 (1973) (quoting *Gravel v. United States*, 408 U.S. 606, 618, 624-25 (1972)).  The "legislative sphere" is broadly construed to include all activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings."  *Eastland*, 421 U.S. at 504 (quoting *Gravel*, 408 U.S. at 625).  When it is determined that "Members are acting within the legitimate legislative sphere[,] the Speech or Debate Clause is an absolute bar to interference," *id*. at 503 (quotation marks omitted), and is applied "broadly to effectuate its purposes," *id*. at 501.  The privilege serves to "protect[] freedom of speech in the legislative forum," and allowing the "questioning about legislative acts … would "interfere" by having a chilling effect on Congressional freedom of speech."  *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 528 (9th Cir. 1983).  To the extent that Plaintiffs challenge Defendant Warren's information-gathering activities, such conduct is absolutely protected by the Speech or Debate Clause. See *Ass'n of Am. Physicians & Surgeons v. Schiff,* 518 F. Supp. 3d 505, 518 (D.D.C. 2021)

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 19
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Plaintiffs predicate their claims on information-gathering and fact-finding by Defendant Warren that is absolutely protected by the Speech or Debate Clause.  The Complaint alleges that Defendant Warren, acting in her capacity as a U.S. Senator, wrote a letter to Amazon for the purpose of suppressing sales of Plaintiffs' "constitutionally protected" book.  Dkt. # 1 ¶¶ 36, 56.  In reality, the letter sought information pursuant to Defendant Warren's legislative responsibilities.[10]  As such, Defendant Warren's actions are absolutely protected by the Speech or Debate clause.  See, *e.g.*, *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1202 (D.C. Cir. 2009) ("Legislative fact-finding is therefore a protected activity."); *McSurely v. McClellan*, 553 F.2d 1277, 1286 (D.C. Cir. 1976) ("[I]nformation gathering … is essential to informed deliberation over proposed legislation."); see also *e.g.*, *Gov't of V.I. v. Lee*, 775 F.2d 514, 521 (3d Cir. 1985) (holding that "fact-finding, information gathering, and investigative activities are essential prerequisites to the drafting of bills and the enlightened debate over proposed legislation"); *Miller*, 709 F.2d at 530 ("Obtaining information pertinent to potential legislation or investigation is … within the 'legitimate legislative sphere.'" (quoting *Eastland*, 421 U.S. at 503)).

The Supreme Court and D.C. Circuit have emphasized that collecting information in furtherance of legislative responsibilities is an activity within the legislative sphere because "[a] legislative body cannot legislate wisely or effectively in the absence of information respecting the conditions which the legislation is intended to affect or change."  *Eastland*, 421 U.S. at 504 (quoting *McGrain v. Daugherty*, 273 U.S. 135, 175 (1927)); see also *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416 (D.C. Cir. 1995) ("The privilege … permits Congress to conduct investigations and obtain information without interference from the courts ….").  Protected information-gathering encompasses formal committee processes, see, *e.g., Eastland*, 421 U.S. at 504, but is not limited to committee investigations.  The Speech or Debate Clause also applies to less formal investigations by committee staff and individual Members as well.  See, *e.g., United States v.*

---

10   As set forth in Defendant Warren's letter to Amazon, her purpose in making the inquires was "to fully understand Amazon's role in facilitating misinformation about COVID-19 and its actions to address the issue . . ."  Dkt. # 8 at 14-15.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 20
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

*Biaggi*, 853 F.2d 89, 102-103 (2d Cir. 1988) (legislative fact-finding during Congressional trip protected by Clause); *McSurely*, 553 F.2d at 1286 (D.C. Cir. 1976); *Jewish War Veterans v. Gates*, 506 F. Supp. 2d 30, 57 (D.D.C. 2007) (Clause protects individual legislators' contacts with "interested organizations or members of the public," including lobbyists, "[t]o the extent that [legislators'] communications, discussions, or other contacts ... constitute information gathering in connection with or in aid of [ ] legislative acts'"); *Pentagen Tech. Int'l, Ltd. v. Comm. on Appropriations*, 20 F. Supp. 2d 41, 44 (D.D.C. 1998) ("The protections of the Speech or Debate Clause extend to congressional use of records and documents.").

Here, Defendant Warren's letter to Amazon, the subject of Plaintiffs' Complaint, was part of Defendant Warren's information-gathering and fact-finding responsibilities as a U.S. Senator. The letter sought responses to specific questions concerning a matter on which the Senator actively legislates, votes, and engages in other official responsibilities. The Speech or Debate Clause permits Members of Congress to "obtain information without interference from the courts," *Williams*, 62 F.3d at 416, because "information gathering … is essential to informed deliberation over proposed legislation," among other considerations, *McSurely*, 553 F.2d at 1286.

In the final analysis, the proper inquiry for courts is to assess the "nature of the act" to determine "whether, stripped of all considerations of intent and motive, [the challenged] actions were legislative." *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it."); see also *Porteous*, 729 F. Supp. 2d at 166 ("The focus is on the nature of the defendants' conduct more generally. So long as the type of conduct [the plaintiff] seeks to enjoin falls legitimately within the scope of legislative activity, it matters not whether the specific conduct is unlawful."). Once the legislative-act test is met, which it is here, "that is the end of the matter" for the courts. *MINPECO, S.A. v. Conticommodity Servs. Inc.*, 844 F.2d 856, 861 (D.C. Cir. 1988). "Such is the nature of absolute immunity, which is—in a word—absolute." *Rangel*, 785 F.3d at 24.

Accordingly, as Defendant Warren's information-gathering letters falls "within the legitimate legislative sphere[,]' the Speech or Debate Clause is an absolute bar to" any claims against her

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 21
(Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

stemming from that activity.  *Eastland*, 421 U.S. at 503; *Ass'n of Am. Physicians & Surgeons v. Schiff*, 518 F. Supp. 3d 505, 518 (D.D.C. 2021) ("[T]he Court finds that the information gathering letters constitute protected legislative acts.")

## IV.  DEFENDANT WARREN'S LETTER DID NOT VIOLATE PLAINTIFFS' FIRST AMENDMENT RIGHTS

The essence of Plaintiffs' argument is that Defendant Warren's letter to Amazon constitutes a prior restraint on their First Amendment rights.  However, the case relied upon by Plaintiffs are inapposite.  Plaintiffs' argument relies heavily on *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), but the facts of *Bantam Books* are not remotely similar to those presented in the case at bar.

In *Bantam Books*, the State of Rhode Island established an official body entitled the "Rhode Island Commission to Encourage Morality in Youth."  *Id* at 59.  The duties of this commission included "educat[ing] the public concerning any book, picture, pamphlet, ballad, printed paper or other thing containing obscene, indecent or impure language, or manifestly tending to the corruption of the youth" as defined by various State laws, and "to investigate and recommend the prosecution of all violations" of those statutes.  *Id.* at 59-60.  The Commission's mode of operation was to notify booksellers on official Commission stationery that certain designated books or magazines distributed to the bookseller had been "reviewed by the Commission and had been declared by a majority of its members to be objectionable for sale, distribution or display to youths under 18 years of age."  *Id*. at 61.  The notices reminded the recipients of the Commission's duty to recommend to the State Attorney General prosecution of purveyors of obscenity in the case of non-compliance.  A police officer then usually visited the booksellers shortly after they received a notice from the Commission in order to ascertain what action the bookseller had taken in response.  Upon receiving one of these notices, booksellers felt compelled to cease distribution of the objectionable publication in order to avoid a court action.  *Id.* at 62-63.

In defense of the lawsuit, the Commission argued that it was merely providing "legal advice" to booksellers.  The Court rejected that argument noting that the Commission's notices, which read like orders, were in fact "thinly veiled threats to institute criminal proceedings against [the

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 22
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

1   booksellers] if they do not come around . . ." *Id.* at 68.  As the Court concluded "[t]hese acts and

2   practices directly and designedly stopped the circulation of publications in many parts of Rhode

3   Island."  *Id.* at 68.

4          The differences between *Bantam Books* and the case at bar are obvious and dramatic.  The

5   Commission in *Bantam Books* was a regulatory body specifically established to police the

6   distribution of publications that it found to contain obscene, indecent, or impure language, or

7   manifestly tending to the corruption of the youth.  The Commission was specifically charged with

8   the duty to investigate and recommend the prosecution of all violations.  And it was found to have

9   wielded those powers in a manner that was designed to suppress free speech by using its authority to

10  refer matters for prosecution as a cudgel to compel compliance with its *de facto* orders declaring

11  certain written materials to be unsavory, regardless of their constitutionally protected nature.

12         Here, Defendant Warren has no statutory or regulatory authority nor is she specifically

13  authorized by law to refer matters for prosecution to any law enforcement body.  She is but a single

14  member of a deliberative legislative body composed of 100 members.

15         Defendant Warren's letter to Amazon was wholly consistent with the duties of a United

16  States Senator to represent the interests of their constituents, inform the public, and gather

17  information in order to identify issues and propose laws to protect citizens.  No doubt one purpose of

18  Defendant Warren's letter was to call out Amazon for what she saw as its role in promoting and

19  propagating vaccine information on its platform through its search engine.  In her role as a United

20  States Senator, she was fully within her rights in taking Amazon to task for what she viewed as

21  "unethical, unacceptable, and potentially unlawful . . ." business practices.  Dkt. # 8 at 10.  See

22  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015) ("[A]s a general

23  matter, when the government speaks it is entitled to promote a program, to espouse a policy, or to

24  take a position. In doing so, it represents its citizens, and it carries out its duties on their behalf.").

25  That Defendant Warren's official role as a U.S. Senator may afford her a louder voice in the

26  marketplace of ideas does not alone cause her speech to cross any legal lines.  And, if Amazon or

27  any other bookseller did choose to examine and change their business practices to Plaintiffs'

28  NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 23
 (Case No. C21-1508BJR)

detriment as a result of Defendant Warren's letter (a fact which is not in evidence), that fact alone is not sufficient to make out a First Amendment violation.

Crucial to Plaintiffs' argument is to demonstrate that Defendant Warren's letter threatened legal action or government sanction, or otherwise threatened to refer Amazon to law enforcement authorities if Amazon failed to take some action in response to the problems identified in the letter. But Defendant Warren's letter cannot reasonably be construed to include any such threat. Specifically, and unlike in *Bantam Books*, Defendant Warren's letter did not threaten that any consequence would befall Amazon regardless of any action or inaction on its part in response to the letter.

For that reason, none of the other cases cited by Plaintiffs support their argument that Defendant Warren's letter amounted to a violation of their First Amendment rights. Indeed, instead of supporting Plaintiffs' argument, these cases demonstrate its fallacy. For example, in *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), the Cook County Sheriff embarked on a campaign intended to harm Backpage because of the "adult section" in its classified adds. He did so by demanding that firms such as Visa and MasterCard prohibit the use of their credit cards to purchase any ads on Backpage. *Id.* at 230. The Court's opinion includes a careful dissection of the Sheriff's letter to the credit card companies. *Id.* at 231-233. Important to the Court's opinion was a line in the Sheriff's letter that states "[a]s the Sheriff of Cook County, a father and a caring citizen, I write to request that your institution *immediately cease and desist* from allowing your credit cards to be used to place ads on websites like Backpage.com." *Id.* at 231. The Sheriff's letter does not speculate about the "potential" lawfulness of the credit card companies' practice of processing payment for adverting as merely an abstract proposition. Instead, the Sheriff's letter strongly implied that the credit card companies were "'willfully play[ing] a central role' in a criminal activity" and were "accomplices in sex trafficking." *Id.* at 232. Further, as the Court noted, the Sheriff's letter cites the federal money-laundering statute, 18 U.S.C. § 1956, "thereby intimating that the credit card companies could be prosecuted for processing payments made by purchasers of the ads on Backpage that promote unlawful sexual activity." *Id.* And "the kicker" for the Court was the

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 24
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Sheriff's demand that the companies provide him with "'contact information for an individual within your organization that I can work with [harass, pester] on this issue.'" *Id.* An internal "strategy memo" demonstrated that the letter was indeed intended to intimidate the companies into compliance by leading them to believe that they faced criminal sanctions if they failed to comply:

> The memo suggested approaching the credit card companies (whether by phone, mail, email, or a visit in person) with threats in the form of "reminders" of "their own potential liability for allowing suspected illegal transactions to continue to take place" and their potential susceptibility to "money laundering prosecutions ... and/or hefty fines." Allusion to that "susceptibility" was the culminating and most ominous threat in the letter.

*Id.* This intimidation campaign worked as the credit card companies complied with the Sheriff's demands almost immediately. *Id.*

For purposes of adjudicating the claim, the Court was guided by the following rule:

> The difference between government expression and in [sic] intimidation—the first permitted by the First Amendment, the latter forbidden by it—is well explained in *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir.2003) (*per curiam*): "the fact that a public-official defendant lacks direct regulatory or decisionmaking authority over a plaintiff, or a third party that is publishing or otherwise disseminating the plaintiff's message, is not necessarily dispositive . . . What matters is the distinction between attempts to convince and attempts to coerce. A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form."

*Id.* at 230-231. Applying this test, the Court recognized that "[a]s a citizen or father, or in any other private capacity, Sheriff Dart can denounce Backpage to his heart's content." *Id.* at 234. Moreover, as the Court noted, "[e]ven in his official capacity the sheriff can express his distaste for Backpage and its look-alikes; that is, he can exercise what is called '[freedom of] government speech.'" *Id.* (citations omitted). However, as the Court observed, a government entity "is not permitted to employ threats to squelch the free speech of private citizens." *Id.* This is where Sheriff Dart ran afoul of the First Amendment: "In his public capacity as a sheriff of a major county . . ., Sheriff Dart is not permitted to issue and publicize dire threats against credit card companies that process payments made through Backpage's website, including threats of prosecution (albeit not by him, but by other enforcement agencies that he urges to proceed against them), in an effort to throttle Backpage. *Id.* at 235.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 25
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

Viewed through this lens, it is evident that Defendant Warren's letter falls within the lawful parameters of "freedom of government speech," wherein she is permitted to freely state her opinion that Plaintiffs' book is noxious, dangerous, or worse, and ought not to be promoted on Amazon's platform.  See *Walker, supra,* 576 U.S. at 208 ("But, as a general matter, when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens, and it carries out its duties on their behalf.").  A government entity has the right to "speak for itself."  *Board of Regents of Univ. of Wis. System v. Southworth*, 529 U.S. 217, 229 (2000).  "[I]t is entitled to say what it wishes," *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 833 (1995), and to select the views that it wants to express, see *Rust v. Sullivan*, 500 U.S. 173, 194 (1991); *National Endowment for Arts v. Finley*, 524 U.S. 569, 598 (1998) (Scalia, J., concurring in judgment) ("It is the very business of government to favor and disfavor points of view").

Nothing in Defendant Warren's letter directs Amazon to take any action, or to refrain from taking any action, under threat of legal sanctions or other potential consequence.  While, as noted previously, Defendant Warren calls out Amazon for engaging in what she views as an unsavory business practice (whether intentionally or unintentionally), the expression of these views does not offend Plaintiffs' First Amendment rights because Defendant Warren's letter makes no legal threat of any kind against Amazon, either express or implied.  It is true that Defendant Warren's letter expresses the Senator's opinion that the Amazon business practice that is the focus of the letter is "unethical, unacceptable, and potentially unlawful."  However, it requires an exceedingly fertile imagination, as opposed to an objectively reasonable belief, to construe those words as containing a threat of prosecution or other legal action in order to squelch free speech.[11]

---

11  In their effort to conjure up a First Amendment violation, Plaintiffs imagine that Defendant Warren's letter impliedly threatens Amazon that it will incur "legal liability for wrongful death or homicide."  Dkt. # 7, p. 12, *l.* 24 – p. 13, *l.* 11. Nothing in Defendant Warren's letter can be reasonably construed as directly or impliedly making any such threat.

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 26
 (Case No. C21-1508BJR)

1    For like reasons, every other case cited by Plaintiffs in support of their motion is factually

2    inapposite.[12]

3    Plaintiffs fault Defendant Warren's letter for calling upon Amazon to ban content containing

4    purported vaccine misinformation, to stop showing Plaintiffs' book to users through Amazon's

5    search function and to stop listing *The Truth About COVID-19* as a bestseller.  Dkt. # 7, p. 11, *l.* 25 –

6    p. 12, *l.* 1.  Defendant Warren's letter actually does none of those things but, in any event, such

7    complaints are of no moment in the First Amendment inquiry.[13]  As previously noted, Defendant

8    Warren's letter does not expressly or impliedly threaten Amazon with any government sanction.

9    Thus, Defendant Warren would be well within her "freedom of government speech" to call upon

10   Amazon to take any of the actions that Plaintiffs describe.  Whether Amazon decided to honor any of

11   the requests made in the Senator's letter would be Amazon's decision made in the absence of any

12   express or implied threat from Senator Warren.

13   Consequently, Plaintiffs have shown no likelihood that they will prevail on the merits, nor

14   have they raised any serious questions regarding the validity of the Senator's letter under the First

15   Amendment.

16

17   12  *Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003) (Defendant's letter could reasonably be interpreted as containing

18   implicit threat of government retaliation if company failed to accede to his requests that billboard signs be removed);
     *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987) (letter from deputy
     county threatened to prosecute Mountain Bell if it did not terminate Carlin's service on its 976 network); *Penthouse Int'l,*

19   *Ltd. v. McAuliffe*, 610 F.2d 1353, 1360 (5th Cir. 1980) (Law enforcement authority employed a calculated scheme that
     included public announcements in the local newspapers, systematic visits to retailers of certain magazines, and a

20   program of carefully timed warrantless arrests constituting a "constructive seizure" of the magazines without due
     process); *Council for Periodical Distributors Ass'n v. Evans*, 642 F. Supp. 552, 563 (M.D. Ala. 1986), *aff'd in part,*

21   *vacated in part sub nom. Council for Periodical Distributors Associations v. Evans*, 827 F.2d 1483 (11th Cir. 1987) (The
     Court observed that "[t]he only difference between the unlawful censorship action in *Bantam Books* and the censorship

22   activity by [the district attorney] and his task force is that [the district attorney] was less subtle and his threats of criminal
     prosecution more direct); *Playboy Enterprises, Inc. v. Meese*, 639 F. Supp. 581, 586 (D.D.C. 1986) (preliminary

23   injunction issued where Attorney General's Commission on Pornography proposed to publish lists of distributors, to
     seek to influence or persuade distributors not to sell so-called pornographic materials, and to recommend the prosecution

24   of corporations or persons perceived to be distributors of pornography); *Am. C.L. Union v. City of Pittsburgh*, 586 F.
     Supp. 417, 419 (W.D. Pa. 1984) (Mayor threatened to "engage in a massive sweep of all news stands and stores and the

25   initiation of criminal proceedings...." if they did not voluntarily agree to remove Hustler magazine from their store
     shelves.)

26   13  The precise source of complaint in Defendant Warren's letter was the demonstrated tendency of Amazon's

27   algorithms to highly promote Plaintiffs' book, which she views as containing vaccine misinformation, in response to
     general inquiries using "common pandemic-related search terms."  Dkt. # 8 at 13.

28   NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
     AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
     INJUNCTION, [etc.] - 27
       (Case No. C21-1508BJR)

### V.   PLAINTIFFS' RIGHTS UNDER THE PRIVILEGES AND IMMUNITY CLAUSE HAVE NOT BEEN VIOLATED BY DEFENDANT WARREN

Plaintiffs' claim under the Privileges and Immunities Clause, Article IV, Section 2 of the Constitution is wholly without merit.  The Privileges and Immunities Clause only places a limitation on the powers of the states.  It does not place any limitation on the Federal Government generally or Congress specifically.  *See Duehay v. Acacia Mut. Life Ins. Co.*, 105 F.2d 768, 775 (D.C. Cir. 1939).  Moreover, because Plaintiff Chelsea Green Publishing, Inc., is not a natural person, it has no rights under the Privileges and Immunities Clause in any event.  *Sarasota Wine Mkt., LLC v. Schmitt*, 987 F.3d 1171, 1179 (8th Cir.), *cert. denied*, 142 S. Ct. 335 (2021).

### VI.   PLAINTIFFS HAVE NOT DEMONSTRATED THAT THEY WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

In order to obtain a preliminary injunction, Plaintiffs are required to show that they are likely to suffer irreparable harm in the absence of preliminary relief.  *Winter, supra*, 555 U.S. at 24–25.  Plaintiffs have made no such showing here.  Instead, they assert, erroneously, that if they have made a colorable showing of a First Amendment violation, irreparable harm has been established "as a matter of law." Dkt. # 7, p. 17, *ll.* 16-21 (citing *CTIA - The Wireless Ass'n v. City of Berkeley, California*, 928 F.3d 832, 851 (9th Cir. 2019)).

Plaintiffs have misread the *CTIA* case.  While irreparable harm is relatively easy to establish in a First Amendment case, "the mere assertion of First Amendment rights does not automatically require a finding of irreparable injury." *CTIA, supra*, 928 F.3d at 851.  Thus, in *CTIA,* the Court concluded that the requisite showing had not been made because "there is nothing in the record showing harm to CTIA or its members through actual or threatened reduction in sales of cell phones caused by the disclosure compelled by the ordinance." *Id.*

Here, the action that is alleged to have violated Plaintiffs' rights, the publication in September 2021 of Defendant's letter to Amazon, is a fully completed act.  There is no allegation that Defendant Warren is engaged in any ongoing activities that are harmful to Plaintiffs and, in any event, Plaintiffs have placed no competent evidence before the Court that Defendant Warren's letter

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION, [etc.] - 28
 (Case No. C21-1508BJR)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

caused any harm to Plaintiffs at the time it was issued.[14]  Thus, Plaintiffs are in effect asking the Court to *presume* that irreparable harm will befall them if the preliminary injunction is not issued.[15]

In order to obtain a preliminary injunction, irreparable harm may not be presumed nor is it sufficient to show a mere possibility of irreparable harm.  Instead, irreparable harm must be shown to be *likely* if a preliminary injunction is not granted.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  No such showing is made by Plaintiffs here.

VII.   A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST

Plaintiffs' argument that it would be in the public interest to issue a preliminary injunction here, tells only one side of the story.  Plaintiffs ask the Court to enjoin "Senator Warren, and all her officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them . . . from sending further letters seeking to suppress constitutionally protected speech, including with specific regard to *The Truth About COVID-19: Exposing the Great Reset, Lockdowns, Vaccine Passports, and the New Normal*."

Of course, an injunction in this format is untenable.  Short of obtaining a judicial declaration before she speaks, it is not possible for Defendant Warren to know with certainty whether, as here, a letter sent by her in regard to the wide scope of matters that are of concern to a United States Senator might ultimately be construed by someone to be "seeking to suppress constitutionally protected speech."  Such an overbroad injunction could have a chilling effect on the Senator's ability to fully carry out her responsibilities to her approximately seven million constituents in the State of Massachusetts.  There is a strong public interest in not hobbling a U.S. Senator in carrying out her responsibilities to the people whom she was elected to represent, including on the important subject of the proliferation of vaccine misinformation.

---

14  Indeed, Plaintiffs' book is, in fact, still available for sale on both Barnes and Noble and Amazon.
- https://www.barnesandnoble.com/w/the-truth-about-covid-19-doctor-joseph-mercola/1138725260
- https://www.amazon.com/Truth-About-COVID-19-Lockdowns-Passports/dp/1645020886

15  Any such claim of harm is belied by the fact that Defendant Warren's letter was sent on September 7, 2021, and Plaintiff waited until November to file suit and then until December—roughly three months after the letter in question—to file this motion for injunctive relief.  A delay in requesting equitable relief is inconsistent with a claim of irreparable injury.  *See Shaffer v. Globe Protection, Inc.*, 721 F.2d 1121, 1123 (7th Cir.1983).

NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
INJUNCTION, [etc.] - 29
 (Case No. C21-1508BJR)

1    This considerable public interest must be weighed against the public interest in granting

2  Plaintiffs an injunction when there is no showing of any ongoing "unlawful" activity by Defendant

3  Warren to enjoin and when the proposed injunction does nothing to "unring" the bell.  Similarly,

4  Plaintiffs' proposal to have Defendant Warren publicly retract her letter provides no guarantee of

5  relief to Plaintiffs because the third parties whose actions are alleged to have caused Plaintiffs'

6  injury are under no obligation to take any actions that favor Plaintiffs' interests.

7                                                     **CONCLUSION**

8    For the forgoing reasons, Plaintiffs' motion for a preliminary injunction should be denied and

9  Defendants' motion to dismiss for lack of subject matter should be granted with prejudice.  In the

10  alternative, Defendant's motion for summary judgment should be granted pursuant to Rule 56(c),

11  Fed. R. Civ. P., and judgment in her favor should be entered as a matter of law.

12

13          DATED this 10th day of January 2022.

14                 Respectfully submitted,

15                 NICHOLAS W. BROWN
                   United States Attorney

16

17                 /s/ Brian C. Kipnis
                   BRIAN C. KIPNIS
18                 Assistant United States Attorney
                   5220 United States Courthouse
19                 700 Stewart Street
                   Seattle, WA 98101-1671
20                 Telephone: (206) 553-7970
                   Fax: (206) 553-4073
21                 E-mail: brian.kipnis@usdoj.gov

22                 Attorneys for Defendant U.S. Senator Elizabeth Warren
                   in her Official Capacity

23

24

25

26

27

28  NOTICE OF MOTION AND CONSOLIDATED MEMORANDUM OF POINTS AND
    AUTHORITIES IN OPPOSITION TO MOTION FOR PRELIMINARY
    INJUNCTION, [etc.] - 30
      (Case No. C21-1508BJR)