Hon. Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT F. KENNEDY, JR., *et al.*, | Case No. 21-cv-01508-BRJ |
| Plaintiffs, | |
| v. | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| U.S. Senator ELIZABETH WARREN, | |
| Defendant. | *Oral argument requested* |

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

# PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
# MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Joseph Mercola, Ronald Cummins, and Robert F. Kennedy, Jr. (the authors of the book *The Truth About COVID-19: Exposing The Great Reset, Lockdowns, Vaccine Passports, and the New Normal* and its foreword), and Chelsea Green Publishing, Inc. have sued Defendant Sen. Elizabeth Warren of Massachusetts. Sen. Warren wrote a letter to the nation's largest bookseller, Amazon.com, Inc., and republished that letter in a press release that remains publicly available online, (1) warning Amazon and other booksellers that selling Plaintiffs' book is "potentially unlawful," (2) calling on Amazon to "stamp out" Plaintiff's book, and (3) warning that "peddling" Plaintiffs' book may make Amazon an accomplice to the killing of "untold" numbers of people. Sen. Warren's letter, and re-publication thereof, are unconstitutional, and Plaintiffs have moved for a preliminary injunction to put an end to this ongoing First Amendment violation.

Sen. Warren opposes this injunction and cross-moves to dismiss or, in the alternative, for summary judgment.[1] The Senator's opposition[2] is devoted largely to spinning her letter as less harmful or threatening than it actually is, with relatively few pages devoted to legal arguments, all of which are contravened by binding authority. But the letter speaks for itself and by its own terms is unconstitutional under *Bantam Books v. Sullivan*, 372 U.S. 58 (1963).

"[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783 (1978). Washington State's own William O. Douglas presaged the essence of this case in 1957: "We tread here on First Amendment grounds. And nothing is more devastating to the rights that it

---

[1] This Memorandum of Law addresses the issues pertinent to Plaintiffs' Motion for a Preliminary Injunction, ECF No. 7, filed December 16, 2021. Sen. Warren's Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment will be addressed in the normal course pursuant to this Court's Standing Order for All Civil Cases.

[2] Sen. Warren's Consolidated Memorandum of Points and Authorities in Opposition to Motion for Preliminary Injunction and in Support of Cross-Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Summary Judgment, Docket No. 30, filed January 10, 2022, is abbreviated herein as "Def. Mem."

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 1

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

guarantees than the power to restrain publication before even a hearing is held. This is prior restraint, and censorship at its worst." *Kingsley Books, Inc. v Brown*, 354 U.S. 436, 446 (1957) (Douglas, J., dissenting). Sen. Warren may not like the facts or analysis or views expressed in *The Truth About COVID-19*, but that does not give her the right to threaten those who distribute this bestselling book.

### I.     Sovereign Immunity Does Not Bar Plaintiffs' Injunctive Claims.

Sen. Warren contends that "sovereign immunity" bars Plaintiffs' claims. She is mistaken; sovereign immunity does not apply to constitutional claims against a federal official seeking injunctive relief. As the Ninth Circuit explained in *E.V. v. Robinson*, 906 F.3d 1082 (9th Cir. 2019), a request for injunction against a federal official "is not 'against the sovereign' if it alleges that the official acted in an unconstitutional manner." *Id*. at 1091 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691, 701-02 (1949)).

While "suits against federal officials in their official capacities *seeking damages* [are] ipso facto against the government for purposes of sovereign immunity," *id*. at 1095,[3] there is a "per se total divestiture of sovereign immunity" over claims seeking *injunctive* relief against a federal official on constitutional grounds, because such "constitutional claims are not 'against the government' for purposes of sovereign immunity." *Id*. at 1090 (citations omitted). "Such suits are not considered suits against the state because the state cannot authorize officials to act in violation of the federal constitution. The official acting unconstitutionally is 'stripped of his official or representative character.'" *Almond Hill School v. USDA*, 768 F.2d 1030, 1034 (9th Cir. 1985) (quoting *Ex parte Young*, 209 U.S. 123, 160 (1908)); *see also Sierra Club v. Trump*, 929 F.3d 670, 694 (9th Cir. 2019) (recognizing "equitable action to enjoin unconstitutional

---

[3] By contrast, damages claims against federal officials *in their personal capacity* are permitted under *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiffs have asserted a *Bivens* claim for damages against Sen. Warren (Compl. ¶¶ 22,106-107); that claim, however, is not before the Court on this motion, which goes solely to injunctive relief for the ongoing First Amendment violation.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 2

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

official conduct").[4]

Myriad cases adjudicate constitutional injunctive claims against federal officials, including one familiar to any first-year law student: *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). As a court of this Circuit recently stated, "a plaintiff may seek injunctive or equitable relief for alleged constitutional violations under 28 U.S.C. §§ 1331 or 1361 against federal officials," and "sovereign immunity [is] not a bar" to such claims. *Getzen v. Winnies*, No. CV 20-01748, 2020 U.S. Dist. LEXIS 247525, at *10 n.5 (D. Ariz. Dec. 17, 2020). Thus sovereign immunity is no bar here.

## II. Plaintiffs Have Standing

Sen. Warren asserts Plaintiffs lack standing, apparently for lack of cognizable injury. This contention fails as a matter of both law and fact.

First, as a matter of law, when an official writes a letter unconstitutionally threatening a third party with legal liability for continued distribution of a plaintiff's speech, the communication is actionable, and may be enjoined, regardless of any additional consequences. This is confirmed in *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015), where the Seventh Circuit held that a letter similar to Sen. Warren's was unconstitutional and issued an injunction. Sen. Warren cites *Backpage.com* several times in her Memorandum but fails to mention the opinion's express holding that *no further injury need be alleged or proven* beyond the letter's unconstitutionality: "Such a threat is actionable and thus can be enjoined even if it turns out to be empty—the victim ignores it, and the threatener folds his tent." *Id.* at 231. *Cf. Capp v. Cty. of San Diego*, 940 F.3d 1046, 1054-55 (9th Cir. 2019) (the test for whether First Amendment retaliation claim was stated is not whether *specific party's* actions were chilled, but whether official's actions would "chill or silence a person of ordinary firmness") (citations omitted). Thus even if there were no further injury in this case—and there is—Plaintiffs would

---

[4] Other circuits so hold as well. *See, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 982 (D.C. Cir. 1996) ("sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional"); *Kozera v. Spirito*, 723 F.2d 1003, 1008 (1st Cir. 1983).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 3

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

have standing and would be entitled to an injunction.

Second, as a factual matter, the Complaint and affidavit establish additional and ongoing injuries: (1) The Senator attacked Plaintiffs' book by name; (2) Barnes & Noble pulled Plaintiffs' book from its e-sales platform two days after the Senator's letter was published; (3) even now, Amazon is demoting Plaintiffs' book in its algorithms and refusing to allow Plaintiffs to advertise the book; and (4) the continued, well-publicized existence of the Senator's letter causes further reputational injury to Plaintiffs every day and threatens to cause additional adverse action by Amazon or other booksellers in the future. Complaint ¶¶ 15-17.

The Senator is incorrect that Plaintiffs must have documentary evidence proving, for example, that Barnes & Noble based its decision to de-platform Plaintiffs' book on Sen. Warren's letter. (Def. Mem. at 14.) On a motion for a preliminary injunction prior to discovery, such documentation is unnecessary. A plaintiff "is not required to prove his case in full at a preliminary-injunction hearing," *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981), where a "lower standard of proof" applies. *Atari Games Corp. v. Nintendo of Am., Inc.,* No. C 88-4805, 1993 U.S. Dist. LEXIS 8183 at *6 (N.D. Cal. Apr. 15, 1993) ("preliminary injunction proceedings involve a lower standard of proof"); *see also, e.g.*, *Ebel v. Corona*, 698 F.2d 390 (9th Cir. 1983) (reversing denial of preliminary injunction where threat to First Amendment was established and lower court improperly imposed on plaintiff a burden to prove additional harm). At this stage of the proceedings, the close temporal proximity between Sen. Warren's letter and Barnes & Noble's action is more than sufficient to demonstrate a causal connection, particularly where the bookseller offered no other ground for the unprecedented action. *Cf., e.g.*, *Okwedy v. Molinari*, 333 F.3d 339, 340 (2d Cir. 2003) ("Molinari faxed [his] letter to PNE regarding the billboards, and before the day was out PNE removed plaintiffs' signs"); *Playboy Enters., Inc. v. Meese*, 639 F. Supp. 581, 585 (D.D.C. 1986) ("it seems more than ironic that many of the decisions not to sell were made *after the Commission's letters were sent out*."); *ACLU v. City of Pittsburgh*, 586 F. Supp. 417, 422 (W.D. Penn. 1984) (finding sufficient

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 4

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

evidence of causation where "prior to the release of the Mayor's letter, [the] magazine was available at local newsstands" but "[s]hortly thereafter [the] magazine could not be locally obtained").

In sum, the threat of a loss of First Amendment freedoms, which is objectively determined and evident from the Senator's letter, suffices for the grant of a preliminary injunction. Even if that did not suffice, Plaintiffs have produced sufficient evidence of detrimental actions taken by booksellers immediately following Sen. Warren's sending and re-publication of her letter.

### III. Neither the Senator's Letter nor Her Press Release, Re-Publishing that Letter, is Protected by The Speech and Debate Clause

Sen. Warren asserts her letter constitutes "legislative fact-finding" protected by the Speech and Debate Clause. (Def. Mem. at 19-22.) But under clear Supreme Court precedent, Sen. Warren cannot hide behind her Speech and Debate immunity here.

"It is well known, of course, that Members of the Congress engage in many activities *other than the purely legislative activities protected by the Speech or Debate Clause*. These include . . . preparing so-called 'news letters' to constituents, *news releases,* and speeches delivered outside the Congress." *Hutchinson v. Proxmire*, 443 U.S. 111, 131 (1979) (quoting *United States* v. *Brewster*, 408 U.S. 501, 512 (1972)) (emphasis added). It is equally well established that a statement protected by Speech or Debate Clause immunity becomes actionable if it is *re-published* outside Congress (for example in a press release). *See, e.g.*, *id*. at 130; *Gravel v. United States*, 408 U.S. 606, 622-24 (1972) (holding that re-publication outside Congress of a libelous statement made on legislative floor is actionable). "The reason is that republishing [the statement] is not an essential part of the legislative process and is not part of that deliberative process 'by which Members participate in committee and House proceedings.'" *Hutchinson*, 443 U.S. at 130 (citations omitted).

*Hutchinson* expressly excludes "news releases" from Speech and Debate Clause

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 5

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

immunity, 443 U.S. at 131, and Sen. Warren's press release of September 8, 2021, *re-published her letter to Amazon in full*.[5] Thus both Sen. Warren's press release and her re-published letter to Amazon are plainly unprotected.

In addition, the notion that Sen. Warren's original letter to Amazon was "legislative fact-finding" is disingenuous and pretextual. To be sure, the six-page letter closes with tacked-on requests for information, but the first five pages are an extended threat to Amazon about the potential illegality and even criminality of "peddling" what Sen. Warren (falsely) refers to as COVID misinformation. Sen. Warren herself described the letter as "calling on Amazon to take aggressive action to *stamp out* COVID-19 misinformation." Calling on booksellers in a public letter to "stamp out" disfavored content is a far cry from official legislative fact-finding. *See, e.g.*, *Bastien v. Off. of Campbell*, 390 F.3d 1301, 1316 (10th Cir. 2004) ("No Supreme Court opinion indicates that Speech or Debate Clause immunity extends to informal information gathering by individual members of Congress."); *cf. Gross v. Winter*, 692 F. Supp. 1420, 1423 (D.D.C. 1988) ("For example, the Clause protects members of Congress from judicial inquiry into their votes, and their participation in committee investigations and proceedings. At the same time, the Clause provides no 'constitutional immunity beyond its carefully defined scope.' It does not protect official acts which are not 'legislative in nature'.") (citations omitted). Thus Sen. Warren's letter to Amazon was *not* protected by the Speech and Debate Clause, and her re-publishing it stripped the letter of any immunity it might have had.[6]

---

[5] *See* Senator Elizabeth Warren, Press Release, Sept. 8, 2021, https://www.warren.senate.gov/ oversight/letters/warren-investigation-finds-amazon-provides-consumers-with-covid-19-vaccine-misinformation-in-search-results (news release describing Warren's letter to Amazon and attaching it as an embedded pdf).

[6] Sen. Warren cites *Association of American Physicians & Surgeons v. Schiff*, 518 F. Supp.3d 505 (D.D.C. 2021), which found that certain letters sent by Rep. Adam Schiff to social media companies were protected by the Speech and Debate Clause. Plaintiffs respectfully submit that the *Schiff* case is wrongly decided, but the Court need not reach that issue because *Schiff* is clearly distinguishable. First, no argument that Rep. Schiff's letters were re-published and thereby stripped of their immunity was considered (much less rejected) by the court in *Schiff*. Second, there is no allegation in *Schiff* that Rep. Schiff publicly stated that his purpose in writing the letters was to "stamp out" disfavored content; instead, his letters generally "requested information about what actions the companies currently take to address misinformation about vaccines on their platforms." *Id.* at 510. Here, by contrast, Sen. Warren herself says her letter calls on Amazon to "stamp out" the books she finds objectionable, confirming that her primary purpose is to curtail distribution, not to request information for legislation.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 6

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

### IV. Plaintiffs Are Likely to Succeed on their Claim that Sen. Warren Violated the First Amendment

Sen. Warren argues that her letter cannot violate the First Amendment because she "has no statutory or regulatory authority" over Amazon, "nor is she specifically authorized by law to refer matters for prosecution to any law enforcement body." (Def. Mem. at 23.) But in *Bantam Books v. Sullivan*—in which the Supreme Court found unconstitutional a letter similarly warning booksellers that their selling certain books was potentially unlawful—the defendants also lacked the "power to apply formal legal sanctions." 372 U.S. 58, 66 (1963). Under *Bantam Books*, as both the Second and Seventh Circuits have expressly held, "the fact that a public-official defendant lacks direct regulatory or decisionmaking authority over a plaintiff, or a third party that is publishing or otherwise disseminating the plaintiff's message" is not "dispositive." *Backpage.com*, 807 F.3d at 230 (quoting *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003)). In neither *Backpage.com* nor *Okwedy* was the defendant "authorized by law to refer matters for prosecution to any law enforcement body," which is the shield that Sen. Warren now claims. *See also Playboy Enters.*, 639 F. Supp. at 586 (preliminary injunction issued against members of federal commission on pornography who warned booksellers about selling certain magazines even though defendants had no authority over booksellers or to refer cases for prosecution).

What matters is not the official's authority, but (1) whether the official "deliberately set about to achieve the suppression of publications deemed 'objectionable'," and (2) whether the communication made to third parties could reasonably be construed as a "veiled threat" of legal or criminal liability. *Bantam Books*, 372 U.S. at 66, 67-68. There can be no doubt that Sen. Warren "deliberately set about to achieve the suppression of publications deemed 'objectionable'," because she herself stated that, through her letter, she was "calling on Amazon to take aggressive action to stamp out COVID-19 misinformation." *See* Press Release, *supra*. Nor can there be any doubt that Sen. Warren's letter conveyed a "veiled threat" to Amazon (and other booksellers) about potential criminal liability; the letter states that

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 7

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

"peddling" Plaintiffs' book is "potentially unlawful," going so far as alleging the causation of "untold" deaths. *See Backpage.com*, 807 F.3d at 234 ("[Defendant argues] that 'nowhere in Sheriff Dart's letter does it say that he thought that they [the credit card companies] were accomplices to a crime.' But the letter implies that they are."). Amazon and other booksellers would reasonably have had the very same reaction to Sen. Warren's letter as that described in *Backpage*: "[She] is calling me an accomplice . . . I'm afraid [s]he might pull strings to get me investigated and even prosecuted by any one of several federal or state agencies." *Id*. at 233.[7]

If there were any doubt that Sen. Warren's letter crosses the line into unconstitutionality, the letter sent in *Rattner v. Netburn*, 930 F.2d 204 (2d Cir. 1993), provides appropriate comparison. The *Rattner* defendants, a village mayor and trustee, wrote to express "concern" about "the negative and political nature of the *Pleasantville Gazette*," a Chamber of Commerce publication:

> It appears that The Chamber of Commerce has crossed the line between being a supportive, nonpartisan, and nonpolitical local organization to one that has a political agenda and purpose. In that regard, I would appreciate hearing from you on the following questions: 1. Was the decision to run the paid, anonymous 'article' - one that attacks our village - made by the entire membership of the organization? 2. Can we have a list of those members who supported the inclusion of this 'article'? 3. Does The Chamber of Commerce have a political purpose? If so, what is that purpose? 4. Was the questionnaire reviewed and approved by the entire membership? 5. Who wrote the actual questions? 6. Are officially constituted members of The Chamber using their office to influence and/or support local political activities?
> I believe that each citizen of Pleasantville deserves and expects answers to these questions. The healthy growth of many local businesses depends on the trust and honesty displayed by our local businesses and merchants to the Village as a whole. I believe—and many of my neighbors believe—that the recent *Gazette* raises significant questions and concerns about the objectivity and trust which we are looking for from our business friends. I would appreciate a reply at your earliest convenience.

*Id.* at 206. The Second Circuit held that this letter—which contains no explicit threats and (unlike Sen. Warren's letter) does not so much as hint that the speech in question was

---

[7] Despite *Bantam Books* and *Backpage.com*, Sen. Warren argues that her letter contained no explicit threats. (Def. Mem. at 24 ("Defendant Warren's letter did not threaten that any consequence would befall Amazon").) But a threat need not be "explicit" or "specific." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). "Veiled" or "implicit" threats suffice. *Bantam Books*, 372 U.S. at 68 ("veiled threat"); *Brodheim*, 584 F.3d at 1270 ("implicit" threats).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 8

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221

potentially unlawful—could "reasonably be viewed as an implicit threat." *Id*. at 210; *see also, e.g.*, *Okwedy*, 333 F.3d at 344 (reversing dismissal even though letter lacked express threat or any warning about potentially "unlawful" conduct); *Playboy Enters.*, 639 F. Supp. at 586 (finding letter likely unconstitutional despite lack of express threat or any warning about potentially unlawful conduct).[8]

Sen. Warren attempts to deny or minimize the letter's destructive effects on the freedom of speech, despite her calling on Amazon to "stamp out" books she disfavors. This Court, however, is well aware of the importance of Amazon's algorithms, *see Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 U.S. Dist. LEXIS 147049, at *2 (W.D. Wash. July 7, 2014), and to quote Justice Clarence Thomas, "as the distributor of the clear majority of e-books and about half of all physical books, Amazon can impose cataclysmic consequences on authors by, among other things, blocking a listing." *Biden v. Knight First Amend. Inst.*, — U.S. —, 141 S. Ct. 1220, 1224 (2021) (Thomas, J., concurring). Sen. Warren's letter calls on booksellers to effectuate nothing less than a prior restraint on books she finds objectionable.

Thus Plaintiffs are likely to succeed on their First Amendment claim. At a minimum, Plaintiffs have raised "serious questions going to the merits," entitling them to a preliminary injunction. *Ramos v. Wolf*, 975 F.3d 872, 887-88 (9th Cir. 2020).

### V. Irreparable Harm, a Favorable Balance of Equities, and Furtherance of the Public Interest are All Established Here as a Matter of Law

The remaining preliminary injunction factors—irreparable harm, a favorable balance of hardships, and furtherance of the public interest—are all established in this case as a matter of law. Under Ninth Circuit authority, all three factors are established where a plaintiff shows a likelihood of success that First Amendment rights have been violated or raises serious questions going to the merits of such a claim. *See, e.g.*, *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1149 (9th Cir. 2021) ("The loss of First Amendment freedoms, for

---

[8] The text of the *Okwedy* and *Playboy Enterprises* letters are recited in full in Plaintiffs' opening Memorandum.

even minimal periods of time, unquestionably constitutes irreparable injury."); *CTIA—The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 851 (9th Cir. 2019) (a "party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury . . . by demonstrating the existence of a colorable First Amendment claim"); *Am. Bev. Ass'n v. City & County*, 916 F.3d 749, 758 (9th Cir. 2019) ("fact that [Plaintiffs] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [Plaintiffs'] favor" and "it is always in the public interest to prevent the violation of a party's constitutional rights").

## CONCLUSION

Sen. Warren's letter to Amazon transgresses the unambiguous holding of *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). The Senator's Memorandum attempts to distinguish *Bantam Books*, arguing in effect that she is beyond the clearly articulated command of the United States Supreme Court. She is not and, respectfully, the requested injunction should issue.

Respectfully submitted this 18th day of January 2022.

**ARNOLD & JACOBOWITZ PLLC**

/s/ Nathan J. Arnold
Nathan J. Arnold, WSBA No. 45356
R. Bruce Johnston, WSBA No. 4646
2701 1st Avenue, Suite 200
Seattle, WA 98121
Nathan@cajlawyers.com
(206) 799-4221
*Attorney for Plaintiffs*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 10

ARNOLD & JACOBOWITZ PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121
(206) 799-4221

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to those registered with CM/ECF.

EXECUTED this 18th day of January 2022.

/s/ Nathan J. Arnold
Nathan J. Arnold, WSBA No. 45356

ARNOLD & JACOBOWITZ PLLC
2701 FIRST AVENUE, SUITE 200
SEATTLE, WA 98121
(206) 799-4221