HONORABLE BARBARA J. ROTHSTEIN

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT F. KENNEDY, JR., a citizen of New York, JOSEPH MERCOLA, M.D., a citizen of Florida, RONALD CUMMINS, a citizen of Minnesota, and CHELSEA GREEN PUBLISHING, INC., a Vermont Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. Senator ELIZABETH WARREN,<br><br>Defendant. | No. 21-cv-01508-BJR<br><br>DEFENDANT SENATOR ELIZABETH WARREN'S MOTION TO DISMISS PURSUANT TO 12(b)(1) AND 12(b)(6) |

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR)

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

# I. INTRODUCTION

This case is a misguided attempt to prevent public officials from speaking out against false and misleading information about COVID-19 vaccines and treatments. Plaintiffs improperly frame a letter Senator Warren sent to Amazon as a "thinly veiled threat" simply because she asks Amazon to take steps to stop facilitating the spread of COVID-19 misinformation and respond to several requests for information. If the letter was a "threat" it was a poor one; Plaintiffs do not allege, because they cannot, that Amazon removed the book from its website in response to the letter.

The Department of Justice has already moved to dismiss the claims against Senator Warren in her official capacity for lack of jurisdiction or, in the alternative, to grant summary judgment on those claims in her favor. Dkt. # 30, p.1. That motion remains pending. Senator Warren now moves to dismiss Plaintiffs' Complaint against her in her personal capacity, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), because (1) there is no "case or controversy" within the meaning of Article III, (2) Senator Warren is entitled to both qualified and *Noerr-Pennington* immunities, and (3) Senator Warren's letter cannot plausibly amount to a First Amendment violation as a matter of law.[1]

# I. FACTUAL ALLEGATIONS

Plaintiffs' claims center on a letter Senator Warren sent to Amazon's Chief Executive Officer on September 7, 2021, raising concerns about Amazon's role in disseminating misinformation about COVID-19 vaccines and treatment and requesting information about Amazon's practices that promote the spread of such information. Dkt. #1 ¶ 7. In her letter, Senator Warren also "nam[ed] certain books" as examples of books containing COVID-19 misinformation,

---

[1] The undersigned counsel certifies that counsel for the parties conferred about the present motion by telephone on March 4, 2022 and concluded that no agreement could be reached to obviate the need for this motion.

DEFENDANT'S MOTION TO DISMISS (NO. 21-CV-01508-BJR) - 1

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

including Plaintiffs' book, *The Truth About COVID-19: Exposing the Great Reset, Lockdowns, Vaccine Passports, and the New Normal*. *Id*. ¶ 7.

As noted in Senator Warren's letter, "[the book] asserts that vitamin C, vitamin D, and quercetin—supplements sold on Mercola's website—can prevent COVID-19 infection," and that "vaccines cannot be trusted."[2] In her letter, Senator Warren cited to sources that directly refute Plaintiffs' COVID-19 misinformation. *Id*. The Senator further stated that "[g]iven the seriousness of this issue, I ask that you perform an immediate review of Amazon's algorithms and, within 14 days, provide both a public report on the extent to which Amazon's algorithms are directing consumers to books and other products containing COVID-19 misinformation and a plan to modify these algorithms so that they no longer do so." *Id.* at 5. Senator Warren did not describe any consequence if Amazon chose not to comply with her request. *Id*. Senator Warren also asked Amazon to respond to several requests for information by September 22, 2021:

> 1. What are Amazon's existing policies regarding the listing, promotion, and sale of books and other products containing COVID-19 misinformation on its platform?
> 2. What specific actions has Amazon taken to address the spread of COVID-19 misinformation via search results or other uses of its platform?
> 3. Why do Amazon's search algorithms prominently list books with COVID-19 misinformation?
> 4. Why do books with COVID-19 misinformation receive "Best Seller" tags from Amazon? What criteria does Amazon use to award these tags, and what steps does Amazon take to highlight products containing the tag?

*Id*. Senator Warren also posted the letter to Amazon on her website. Dkt. # 1 ¶ 14.

Although Plaintiffs allege that "*as a direct result* of Senator Warren's letter" to Amazon, a *different* bookseller, Barnes & Noble, notified the book's publisher by email that it would no longer

---

[2] Plaintiffs selectively quote, and thereby incorporate, Senator Warren's letter into their Complaint, which is attached in its entirety as Exhibit A to the Declaration of Ben Stafford ("Ex. A"). *See also* Letter from Senator Elizabeth Warren to Amazon CEO Andy Jassy, (Sep. 7, 2021), available online at https://www.warren.senate.gov/imo/media/doc/2021.9.7%20Letter%20to%20Amazon%20on%20COVID%20Misinformation.pdf (last visited Mar. 4, 2022).

| DEFENDANT'S MOTION TO DISMISS | ELIAS LAW GROUP |
| --- | --- |
| (NO. 21-CV-01508-BJR) - 2 | 1700 Seventh Ave, Suite 2100 |
| | Seattle, WA 98101 |
| | (206) 656-0176 |

sell an e-book version, they make no assertions that link this decision to Senator Warren's letter—or even indicate that Barnes & Noble was aware of such letter. *Id.* ¶ 15 (emphasis added). Indeed, the book is still being sold on both Amazon and Barnes & Noble's websites.[3] Plaintiffs routinely allege facts, not on personal knowledge, but instead entirely on "information and belief." In fact, Plaintiffs recognize that "it is impossible for Plaintiffs to know with certainty whether, as a result of Senator Warren's letter" Amazon is suppressing or otherwise demoting their book, but nevertheless speculatively allege "that Amazon is in fact covertly taking such action." *Id.* ¶ 17.[4]

Plaintiffs initiated this lawsuit on November 7, 2021, two months after Senator Warren's letter was sent. Dkt. # 1, p.17. Plaintiffs assert claims against the Senator in her individual and official capacities, alleging that she violated the First Amendment and deprived Plaintiffs of rights and privileges under the U.S. Constitution. *Id*. ¶¶ 90-110. Plaintiffs seek injunctive relief against the Senator in her official capacity and damages against her in her personal capacity. *See id*., p.17.

On December 9, 2021, Plaintiffs filed a motion for injunctive relief against Senator Warren "in her official capacity" only. Dkt. # 7, p. 1.[5] On January 7, 2022, counsel for Senator Warren waived service. Senator Warren timely files this motion to dismiss. Fed. R. Civ. P. 12(a)(1)(A)(ii).

## II.   STANDARDS OF REVIEW

Rule 12(b)(1) requires dismissal for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Where the plaintiff lacks standing, the Court lacks subject matter jurisdiction and must

---

[3] Joseph Mercola & Ronnie Cummins, *The Truth About COVID-19: Exposing The Great Reset, Lockdowns, Vaccine Passports, and the New Normal,* Barnes & Noble https://www.barnesandnoble.com/w/the-truth-about-covid-19-doctor-joseph-mercola/1138725260?ean=9781645021513 (last visited Mar. 4, 2022).

[4] On September 22, 2021, Amazon answered Senator's Warren letter (which was published online), responding to her requests for information and explicitly stating that it "continue[s] to list the books in question." Ex. B Charlotte Schubert, *COVID-19 misinformation still featured on Amazon, months after inquiries from lawmakers,* Geekwire (Dec. 14, 2021, 10:04 AM), https://www.geekwire.com/2021/covid-19-conspiracy-books-still-featured-on-amazon-months-after-inquiries-from-lawmakers/.

[5] Claims Senator Warren in her official capacity were fully briefed as of February 14, 2022. Dkt. # 40, p.13. Senator Warren, in her personal capacity, joined in opposition to the motion for injunctive relief. Dkt. # 31, p.1.

DEFENDANT'S MOTION TO DISMISS　　　　　　　　　　　　　　ELIAS LAW GROUP
(NO. 21-CV-01508-BJR) - 3　　　　　　　　　　　　　　　　　　　1700 Seventh Ave, Suite 2100
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Seattle, WA 98101
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　(206) 656-0176

1  dismiss the case. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing *Steel Co. v.
2  Citizens for a Better Env't*, 523 U.S. 83, 101, 118 (1998)). To establish standing, a plaintiff must
3  demonstrate injury, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559
4  (1992). The plaintiff "bears the burden of establishing these elements." *Id*. at 561. Because courts
5  "have an independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh
6  v. Y&H Corp*., 546 U.S. 500, 514 (2006), they are not limited to the arguments raised by the parties
7  when considering a Rule 12(b)(1) motion, and they are free to consider materials outside the
8  pleadings. *Tarhuni v. Sessions*, 692 F. App'x 477, 477 n.1 (9th Cir. 2017).

9  Rule 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief
10 can be granted." Fed. R. Civ. P. 12(b)(6). To plead a viable claim, the allegations must transcend
11 the "speculative," "conceivable," and "possible" and "state a claim to relief that is plausible on its
12 face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 566–67, 570 (2007). The Court must
13 disregard "legal conclusions" and "conclusory statements" and must scrutinize factual allegations
14 to ensure that they are more than "'merely consistent with' a defendant's liability." *Ashcroft v.
15 Iqbal*, 556 U.S. 662, 677–79 (2009). Dismissal under Rule 12(b)(6) can be based on the lack of a
16 cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal
17 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). In considering a
18 Rule 12(b)(6) motion, the Court may take judicial notice of facts incorporated by reference in the
19 complaint, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003), as well as "court filings and
20 other matters of public record." *Reyn's Pasta Bella, LLC v. Visa USA, Inc*., 442 F.3d 741, 746 n.6
21 (9th Cir. 2006). "[D]oing so does not convert a Rule 12(b)(6) motion to one for summary
22 judgment." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 4

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

## III. AUTHORITY AND ARGUMENT

**A.   The Court lacks jurisdiction because Plaintiffs fail to establish they have standing.**

To establish standing, Plaintiffs must have suffered "an injury in fact" that is "fairly traceable to the challenged action of the defendant," and "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560-61 (internal quotation omitted). Plaintiffs fail to satisfy this "irreducible constitutional minimum," *id*. at 560, leaving this Court without jurisdiction.

To satisfy Article III's injury-in-fact requirement, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Many of Plaintiffs' allegations of injury are speculative, as they acknowledge. *See* Dkt. # 1 ¶ 17 ("it is impossible for Plaintiffs to know . . . whether, as a result of Senator Warren's letter, Amazon has, or is now, covertly demoting, downgrading, or otherwise suppressing *The Truth About COVID-19*"). This "hypothetical" harm is not "distinct and palpable," *Warth v. Seldin*, 422 U.S. 490, 501, or "'real and not abstract," *Spokeo,* 578 U.S. at 340.

The other harms Plaintiffs allege fail the second prong of the Article III test: causation. "[T]here must be a causal connection between the injury and the conduct complained of," *Lujan*, 504 U.S. at 560, and the injury must not be "th[e] result [of] the independent action of some third party not before the court," *id.* (quotation omitted). Plaintiffs allege that Amazon will not categorize the book as "medical work" or promote the book in its algorithm, but Plaintiffs do not claim—because they cannot—that Amazon *had* categorized the book as a medical work or promoted the book in some way, only to reverse course after and in response to Senator Warren's inquiry. Dkt. # 1 ¶ 85. Indeed, Amazon's response to Senator Warren's letter does *not* suggest that

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 5

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

they made any changes in response to her inquiry; they simply provided her with information and explicitly said that Plaintiffs' book remains on its platform. *See* Ex B.

Plaintiffs also allege in a conclusory fashion that, "as a direct result of Senator Warren's letter," "Barnes & Noble[] notified the publisher" of Plaintiffs' book "that it would no longer sell the work as an e-book." Dkt. # 1 ¶ 15. But the decision was reversed, *id.* ¶ 16. and Plaintiffs do not claim that e-book sales ever stopped. Plaintiffs allege no facts that, if proven, would support their conclusion that the Barnes & Noble's "editorial decision," *id.* ¶ 84, was caused by Senator Warren's inquiry of Amazon, and not "many others in her political party," *id.* ¶ 10, the medical community, or public opinion. In fact, Plaintiffs fail to allege that Barnes & Noble *was even aware of* Senator Warren's inquiry to Amazon. This Court need not credit such speculative and bare allegations. *Twombly*, 550 U.S. at 557 (finding "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").[6]

The redressability prong of standing overlaps with causation, and Plaintiffs fail to satisfy it as well. Senator Warren's inquiry was sent to Amazon over six months ago, and Plaintiffs' book and e-book continue to be sold on its platform.[7] Assuming, purely for the sake of argument, that Senator Warren's letter was somehow unlawful, even "[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Am.-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 507 (9th

---

[6] Plaintiffs also allege that "[i]ndependent booksellers are refusing to sell Plaintiffs' book" and their books are not being sold in brick-and-mortar stores. Dkt. # 1 ¶¶ 88-89. Plaintiffs do not plead that these refusals only happened after Senator Warren's inquiry or because of it. There are many other reasons that booksellers may not want to display a book, particularly one urging readers not to get vaccinated against COVID-19 during the pandemic. Such "allegations are too vague to plead successfully his standing." *Thomas v. Mundell*, 572 F.3d 756, 763 (9th Cir. 2009).

[7] *See* Joseph Mercola & Ronnie Cummins, *The Truth About COVID-19: Exposing The Great Reset, Lockdowns, Vaccine Passports, and the New Normal,* Amazon (Apr. 29, 2021), https://www.amazon.com/dp/1645020886/ref=cm_sw_em_r_mt_dp_XZRJNQQ1QE0K32FJ111S (last visited Mar. 4, 2022); Barnes & Noble, https://www.barnesandnoble.com/w/the-truth-about-covid-19-doctor-joseph-mercola/1138725260?ean=9781645021513 (last visited Mar. 4, 2022).

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 6

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

1  Cir. 1991) (quotation omitted). Plaintiffs have no continuing harm, and the booksellers allegedly
2  suppressing Plaintiffs' book are not before this Court.

3      The closest analog to this case is *Ass'n of Am. Physicians & Surgeons v. Schiff*, Case No.
4  1:20-cv-106 (D.D.C. 2020). Congressman Schiff sent letters to Amazon, Google, and Facebook
5  "to encourage them to use their platforms to prevent what [Congressman] Schiff asserted to be
6  inaccurate information on vaccines" and "request[ing] information about what actions the
7  companies currently take to address misinformation about vaccines on their platforms." 518 F.
8  Supp. 3d 505, 510 (D.D.C. 2021), *aff'd sub nom.* 23 F.4th 1028 (D.C. Cir. 2022). He also issued a
9  press release with copies of his letters. *Id*. Plaintiff AAPS alleged that Amazon terminated it from
10 one of its programs, Twitter added public health disclaimers, and traffic to its website decreased.
11 *Id*. at 511. The district court dismissed the case for lack of standing, and the D.C. Circuit affirmed.

12     In dismissing AAPS's claims, the district court held its allegations were insufficient to
13 satisfy Article III . *Id.* at 513-15. It found AAPS failed to satisfy the causation element of standing
14 because the harms AAPS alleged were the result of third-party companies, and Schiff's letters "did
15 not advocate for any specific action." *Id*. at 516 ("These allegations are not plausible and ignore
16 the innumerable other potential causes for the actions taken by the technology companies."); *see*
17 *also Schiff*, 23 F.4th at 1034 (same). The district court also concluded that AAPS failed to plead
18 redressability "for the same reasons they fail to show causation." 518 F. Supp. 3d at 516 (finding
19 it "not plausible" that companies would revise their policies on medical information because "one
20 congressman" retracted his "public statements about vaccine misinformation").

21     As in *Schiff*, Plaintiffs' case "depends on an analytical leap based on bald speculation rather
22 than allegations of fact." *Id.* at 515; *Schiff*, 23 F.4th at 1034–35 (D.C. Cir. 2022) ("It is far less
23 plausible that the companies' actions were a response to one legislator's inquiry than that they

24

were a response to widespread societal concerns about online misinformation."). The Court should similarly dismiss Plaintiffs' Complaint for lack of standing.

**B.      Plaintiffs fail to state a claim upon which relief may be granted.**

   **1.      Senator Warren is entitled to qualified immunity.**

Federal officials receive qualified immunity when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Butz v. Economou*, 438 U.S. 478, 507 (1978). In analyzing qualified immunity, the Court examines "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1198 (9th Cir. 2021). The Court has discretion to decide which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "Addressing the second prong before the first is especially appropriate where 'a court will rather quickly and easily decide that there was no violation of clearly established law.'" *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir. 2019) (quoting *Pearson*, 555 U.S. at 239).

Unlike in 42 U.S.C. § 1983 suits, claims against federal officers for violations of constitutional rights have only been recognized in certain contexts. As a result, in *Bivens* actions, the Court "engage[s] in a two-step inquiry," "first inquir[ing] whether the request involves a claim that arises in a 'new context' or involves a 'new category of defendants'" and then "ask[ing] whether there are any 'special factors that counsel hesitation.'" *Boule v. Egbert*, 998 F.3d 370, 385 (9th Cir. 2021), *cert. granted in part* (2021) (quotation omitted).

This case involves a new context: "The Supreme Court has never explicitly recognized a *Bivens* remedy for a First Amendment claim," *Vega v. United States,* 881 F.3d 1146, 1153 (9th Cir. 2018) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)), and the case implicates a

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 8

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

different constitutional right than established *Bivens* remedies in the Fourth, Fifth, and Eighth Amendment contexts. Although the Ninth Circuit recently extended *Bivens* to a First Amendment *retaliation* claim, the novel First Amendment claims here are substantially different: they are based upon a 1963 Supreme Court case concerning restraints on obscenity. They are also brought against a new kind of defendant—a sitting United States Senator. And special factors counsel against extending *Bivens* to this claim, including the critical and decidedly novel context of the COVID-19 pandemic and the implications on public health of misinformation about the same.

But even assuming Plaintiffs' First Amendment *Bivens* action against Senator Warren were cognizable, Plaintiffs cannot "rely on abstract formulations of First Amendment law that define their rights at a high level of generality" to establish a claim. *Saved Mag.*, 19 F.4th at 1199 (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Instead, the "clearly established law [inquiry] must be particularized to the facts of the case." *Id*. The law needs to give Senator Warren "fair notice that her conduct was unlawful." *Kisela*, 138 S. Ct. at 1152.

No case provides that notice. Even where courts have found that the case before them involves factual similarities to *Bantam Books*, 372 U.S. 58 (1963)—the case Plaintiffs rely upon in bringing this action—they have affirmed grants of qualified immunity where an officer could have reasonably believed their action would not be viewed as a threat. In *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007), for example, the Second Circuit held that "because *Bantam Books* [and another case] present examples of threats that are more direct on their face than those defendants used here, these cases were not 'closely analogous' enough to the circumstances here to give the defendants' fair warning of the illegality of their actions." *Id.* It granted defendants qualified immunity. *Id*. at 71. Another case involved even more parallels to *Bantam Books*, including commissions established to investigate pornography and letters sent to various distributors.

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 9

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

*Playboy Enterprises, Inc. v. Meese*, 746 F. Supp. 154, 160 (D.D.C. 1990), *aff'd sub nom. Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991). The district court there held that "[w]hile the facts in *Bantam* are similar to those in the instant case, *Bantam* can be distinguished from this case based on several crucial facts" so granting qualified immunity was warranted. *Id.*

As in these cases, and as a threshold matter prior to reaching the merits, the Court should find that the specific rights at issue here were not clearly established so as to give Senator Warren sufficient notice of liability and should grant her qualified immunity.

### 2. Plaintiffs fail to plausibly allege a First Amendment violation.

In support of their First Amendment claim, Plaintiffs rely exclusively on the line of cases under *Bantam Books*, arguing that Senator Warren's letter "effected an unconstitutional prior restraint" on their First Amendment rights. Dkt. # 1 ¶ 93. But *Bantam Books* and its progeny are plainly distinguishable from this case.[8]

In *Bantam Books*, the "Rhode Island Commission to Encourage Morality in Youth" was tasked with reviewing obscene language "tending to the corruption of the youth" and authorized "to investigate and recommend the prosecution of all violations" of the State's general laws. 372 U.S. at 59-60. The Commission sent letters to distributors explicitly threatening legal sanctions unless they removed publications that the Commission found objectionable. *Id.* at 62, 68. The notices also said that "Chiefs of Police" had been given the names of the objectionable publications and stated that the Commission had a duty to recommend to the Attorney General purveyors of obscenity for prosecution. *Id.* Further, the notices said that the Attorney General would "act" for

---

[8] In a single paragraph, Plaintiffs allege viewpoint discrimination. *See* Dkt. #1, ¶ 94. "Viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). Because Senator Warren has not "imposed . . . any prohibitions" of Plaintiffs' viewpoint, Plaintiffs "have failed to allege a colorable viewpoint discrimination claim." *Am. Fam. Ass'n, Inc. v. City & Cnty. of S. F.*, 277 F.3d 1114, 1125 (9th Cir. 2002) (dismissing the same).

the Commission in the case of "non-compliance" and thanked recipients for their "cooperation." *Id.* And the notice was followed by a police visit to the targeted distributors. *Id.* at 63.

In short, the Commission informed distributors that it had given their names to the police and would refer non-cooperators to the Attorney General for prosecution. In finding a First Amendment violation, the Court acknowledged that though the plaintiff was technically "'free' to ignore the Commission's notices, in the sense that his refusal to 'cooperate' would have violated no law," his "compliance with the Commission's directives was not voluntary." *Id.* at 68.

The Ninth Circuit recently underscored *Bantam Books*' limited scope in analyzing whether Twitter's First Amendment retaliation claim against the Texas Attorney General was ripe for review. The Ninth Circuit distinguished the notices in *Bantam Books* from the Attorney General's communication to Twitter because "unlike the Commission, the OAG [did] not allege[] that the law has been broken" but instead "started an investigation and requested documents." *Twitter, Inc. v. Paxton*, No. 21-15869, 2022 WL 610352, at *6 (9th Cir. Mar. 2, 2022). The court rejected Twitter's argument that the statement "[a]s AG, I will fight them with all I've got" created an "immediate First Amendment injury that [the] court[s] may remedy," *id*.

This case, too, is markedly different from *Bantam Books* in many ways—and the action alleged is far less threatening than that of the Texas Attorney General in *Twitter*.[9] First, and most significantly, Senator Warren did not make the sorts of explicit threats of criminal prosecution at issue in *Bantam Books*. She did not tell Amazon that she had referred it to the police. She did not threaten to recommend to the United States Attorney General that it be prosecuted. Senator Warren did not purport to have any authority to refer Amazon for criminal prosecution or legal sanctions,

---

[9] Plaintiffs mischaracterize the Supreme Court's ruling in *Bantam Books*—claiming it held that state officials violated the First Amendment "by sending letters to booksellers warning that the sale of certain named books was potentially unlawful." Dkt. #1 ¶ 2. Nowhere in the decision does the Supreme Court use the phrase "*potentially* unlawful." Rather, the Commission provided a threat of prosecution—which was followed with visits from police officers.

| | |
|---|---|
| DEFENDANT'S MOTION TO DISMISS | ELIAS LAW GROUP |
| (NO. 21-CV-01508-BJR) - 11 | 1700 Seventh Ave, Suite 2100 |
| | Seattle, WA 98101 |
| | (206) 656-0176 |

nor ever threaten to do so. Unlike *Bantam Books* where the Commission had the authority to "recommend prosecution" for distributors who did not remove objectionable publications, Plaintiffs fail to allege that Senator Warren is somehow authorized to issue sanctions to Amazon for selling Plaintiffs' book (nor could they).[10]

Second, and unlike in *Bantam Books*, Senator Warren did not identify any law violated, or say that Amazon's actions were in fact unlawful. Taken as a whole, Senator Warren's letter was an *inquiry* to Amazon regarding its mechanisms for detecting books containing COVID-19 misinformation, not a threat of sanctions for failing to remove Plaintiffs' book, as in *Bantam Books*.

Third, the context here is clearly dissimilar—demanding that small vendors remove magazines containing obscenity and asking a massive corporation like Amazon what actions it is taking to prevent the spread of COVID-19 misinformation in the height of a global pandemic are not comparable situations for protected speech. What is more, Plaintiffs acknowledge that "many others in the Senator's political party" share her views on their book. Thus, to suggest that Senator Warren's letter alone, rather than public sentiment or the editorial judgments of third parties, led to any particular action on the part of Amazon or other booksellers is an obvious overreach.

Plaintiffs' reliance on the Seventh Circuit's decision in *Backpage.com, LLC* is similarly misplaced. In *Backpage.com, LLC*, the county sheriff sent letters to credit card companies on his official letterhead stating, "As the Sheriff of Cook County, a father and a caring citizen, I write to request that your institution ***immediately cease and desist*** from allowing your credit cards to be used to place ads on websites like Backpage.com." *Backpage.com, LLC v. Dart,* 807 F.3d 229,

---

[10] Plaintiffs' sole support for their claim that Senator Warren issued a "thinly veiled threat" to Amazon is her use of the phrase "potentially unlawful." Dkt. # 1 ¶ 7. But Plaintiffs take Senator Warren's words out of context, which she used in conjunction with highlighting Amazon's role more generally in "providing consumers with false and misleading information about FDA-authorized KN95 masks" and disseminating misinformation about COVID-19 on its platform beyond the sale of Plaintiffs' book. Ex. A at 1.

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 12

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

231 (7th Cir. 2015) (emphasis added). He also wrote that their involvement with Backpage.com had "become increasingly indefensible," and that "[f]inancial institutions . . . have the legal duty to file 'Suspicious Activity Reports' to authorities in cases of human trafficking and sexual exploitation of minors," citing to the federal money-laundering statute, 18 U.S.C. § 1956, and thus implying prosecution for their failure to comply. *Id.* at 232. The credit card companies followed the sheriff's orders. *Id.* In finding a First Amendment violation, the court reasoned that the "[w]hat matters is the distinction between attempts to convince and attempts to coerce." *Id.*

Senator Warren's letter to Amazon is, again, readily distinguishable. It was sent as cases of the deadly delta variant spiked, set out multiple pages of heavily cited background information, stated her position, and asked Amazon for information to stop the spread of misinformation about COVID-19. *See generally* Ex. A. At most, the letter aimed to *persuade* Amazon to act based on this counter-information, it did not *coerce* with a threat of legal sanctions. A sheriff's demand to "immediately cease and desist" while referencing the recipient's legal responsibilities and legal authority, by contrast, plainly sought to coerce with the threat of criminal prosecution.

This case is more akin to the numerous cases in which courts have declined to find a First Amendment violation under *Bantam Books*.[11] Plaintiffs' lawsuit is itself an effort to chill criticism

---

[11] *See VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021), *cert. denied sub nom. Vdare Found. v. Colo. Springs, Co*, No. 21-933, 2022 WL 585900 (U.S. Feb. 28, 2022) (affirming motion to dismiss and distinguishing *Bantam Books* because "nothing in the [Defendant's] Statement was plausibly a threat, order, mandate, or exercise of control over a private entity's decision-making process"); *Penthouse Int'l, Ltd*, 939 F.2d at 1016 (holding that public officials were entitled to criticize publishers of pornography where letter contained no threat or intimation of intent to prosecute or prescribe publisher's conduct); *R.C. Maxwell Co. v. Borough of New Hope*, 735 F.2d 85, 86 (3d Cir. 1984) (finding no First Amendment violation where officials wrote a letter to the lessor of a billboard space "firmly suggest[ing] that Citibank remove the unsightly billboards" and mentioning "the pending billboard ordinance, and the possibility that Citibank might find itself subject to legal proceedings if the billboards remained where they stood"); *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 38–39 (2d Cir. 1983) (finding no violation where official sent letters to retail stores requesting that they refrain from selling a controversial board game, as letter could not reasonably be interpreted as "intimating that some form of punishment or adverse regulatory action will follow" where official did not refer to specific adverse consequences for failure to respond or have power to impose sanctions for noncompliance).

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 13

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

of the information they peddle regarding COVID-19. But the Ninth Circuit "agree[s] with the host of other circuits that recognize that public officials may criticize practices that they would have no constitutional ability to regulate, so long as there is no actual or threatened imposition of government power or sanction." *See Am. Fam. Ass'n,*, 277 F.3d at 1125 (affirming dismissal of free speech claim where city officials criticized anti-gay speech and adopted resolutions urging television stations not to air it because there was "no sanction or threat of sanction" for noncompliance). Plaintiff cannot plead a plausible First Amendment claim.

3. **Senator Warren is entitled to *Noerr-Pennington* immunity.**

The *Noerr–Pennington* doctrine "is based on and implements the First Amendment right to petition." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). "In the Ninth Circuit, the *Noerr-Pennington* doctrine provides immunity from both federal and state statutory and common-law liability." *Mercer Publ'g, Inc. v. Smart Cookie Ink, LLC*, No. C12-0188JLR, 2012 WL 12863934, at *2 (W.D. Wash. July 25, 2012). The *Noerr–Pennington* doctrine is an available defense in constitutional tort actions for government officials. *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092–93 (9th Cir. 2000) ("This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens."). In determining whether to grant immunity under *Noerr-Pennington*, courts consider whether the defendant's conduct constitutes a protected petitioning activity and whether the proposed liability imposes a burden upon that activity. *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009). If the answers are yes, courts will grant Rule 12(b)(6) motions to dismiss to preserve the "breathing space" guaranteed by the First Amendment. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 931-33 (9th Cir. 2006); *see also Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 14

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

(9th Cir. 1998) ("the danger that the mere pendency of the [damages] action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required").

Senator Warren's inquiry to Amazon constitutes protected petitioning activity. Although Amazon is a private company, "the law of th[e 9th] circuit establishes that communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr–Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Sosa*, 437 F.3d at 935. The Supreme Court has held that "[a] publicity campaign directed at the general public and seeking government action is covered by *Noerr–Pennington* immunity." *Manistee Town Ctr.,* 227 F.3d at 1092 (citation omitted). Here, the petitioning activity is Senator Warren's fact-finding and information gathering to better understand the need for legislation to protect consumers from COVID-19 misinformation and inquiries into Amazon's compliance with the *COVID-19 Consumer Protection Act*. As Footnote 1 in her inquiry indicates, Senator Warren had communicated with Amazon about its role in COVID-19 misinformation related to KN95 masks. *See* Ex. A at 1. Senator Warren also published the inquiry in a press release, describing the "seriousness of the issue" of COVID-19 misinformation and companies like Amazon's role.

This lawsuit burdens Senator Warren's First Amendment right to petition. Plaintiffs are forcing a sitting United States Senator to defend a lawsuit for inquiring into the COVID-19 misinformation practices of a large company and bringing attention to the issue through a press release. The Court should thus grant Senator Warren immunity under the *Noerr-Pennington* doctrine and dismiss Plaintiffs' case on that basis.

## IV. CONCLUSION

For the reasons set forth above, Senator Warren respectfully requests that the Court dismiss Plaintiffs' claims against her in her personal capacity in their entirety with prejudice.

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 15

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

| | |
|---|---|
| Dated: March 8, 2022 | /s Ben Stafford<br>William B. Stafford<br>WSBA No. 39849<br>Lindsay McAleer<br>WSBA No. 49833<br>**Elias Law Group LLP**<br>1700 Seventh Ave, Suite 2100<br>Seattle, WA 98101<br>(206) 656-0176<br>(206) 656-0235<br>BStafford@elias.law<br>LMcAleer@elias.law<br><br>Elisabeth C. Frost*<br>Melinda K. Johnson*<br>**Elias Law Group LLP**<br>10 G Street NE, Suite 600<br>Washington, DC 20002<br>(202) 968-4513<br>(202) 968-4674<br>EFrost@elias.law<br>MJohnson@elias.law<br><br>*Admitted pro hac vice*<br><br>*Attorneys for Defendant Senator Elizabeth Warren in her individual capacity* |

DEFENDANT'S MOTION TO DISMISS
(NO. 21-CV-01508-BJR) - 16

ELIAS LAW GROUP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

**CERTIFICATE OF SERVICE**

I, William B. Stafford, certify under penalty of perjury that on March 8, 2022, a copy of the foregoing was sent via the Court's electronic filing system to the following:

    Nathan J. Arnold, WSBA #45356
    Nathan@CAJLawyers.com
    R. Bruce Johnston, WSBA #4646
    Bruce@rbrucejohnston.com
    ARNOLD & JACOBOWITZ, PLLC
    2701 First Avenue, Suite 200
    Seattle, WA 98121

<u>**By: s/ *Ben Stafford***</u>
William B. Stafford
WSBA No. 39849
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176
BStafford@elias.law

CERTIFICATE OF SERVICE
(NO. 21-CV-01508-BJR) - 1