The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT F. KENNEDY, JR., et al.,

        Plaintiffs,

vs.

ELIZABETH WARREN,

        Defendant.

Case No. 2:21-cv-01508-BJR

ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

Plaintiffs Robert F. Kennedy, Jr., Joseph Mercola, Ronald Cummins, and Chelsea Green Publishing, Inc. ("Chelsea Green") brought a motion seeking a preliminary injunction against Defendant Senator Elizabeth Warren, in both her individual and official capacity, claiming that Defendant Warren violated Plaintiffs' First Amendment rights when she wrote a letter to Amazon criticizing a book Plaintiffs had published. Having reviewed the motion, the record of the case, and the relevant legal authorities, the Court will deny Plaintiffs' motion for a preliminary injunction. The reasoning for the Court's decision follows.

## II. BACKGROUND

On May 16, 2021, Chelsea Green published *The Truth About COVID-19: Exposing the*

*Great Reset, Lockdowns, Vaccine Passports, and the New Normal*, a book co-authored by plaintiffs Mercola and Cummins, and featuring a foreword by plaintiff Kennedy. Dkt. 8 ¶¶ 3-5. The book was or is sold by Amazon, Barnes & Noble, and other unspecified booksellers. *See id.* ¶ 38-39, 43-44. According to Plaintiffs, the book was at one point classified as a bestseller by *USA Today* and the *Wall Street Journal*. *Id.* ¶ 6. Plaintiffs describe the book as "sharply condemn[ing] government COVID policies, including lockdowns and vaccine mandates" and "cit[ing] scientific studies and highly credible news sources for the facts it reports." *Id.* ¶ 7.

On September 7, 2021, Defendant Warren wrote a letter to Amazon that described *The Truth About COVID-19* as containing "misinformation about COIVD-19 vaccines and treatments." Dkt. 8, Ex. A, at 1. The letter criticized Amazon for selling and effectively promoting the book via the algorithms that govern its website's search engine and "Best Seller" rankings. *Id.* at 1-2. For example, searches on Amazon.com for generic terms like "COVID-19" and "vaccine" often yielded Plaintiffs' book as the first result. *Id.* at 2-3. Additionally, the book was labeled a "Best Seller" on the site and ranked as the "#1 Best Seller" in the "Political Freedom" subcategory of books. *Id.* Defendant Warren's letter also identified several similar books, not authored by Plaintiffs, that were labeled as bestsellers and that also appeared near the top of COVID-19- or vaccine-related search results. *Id.* at 4.

Defendant Warren characterized this apparently favorable treatment of Plaintiffs' and other books as "peddling misinformation" and as part of a "pattern and practice of misbehavior" that amounted to "an unethical, unacceptable, and potentially unlawful course of action" by Amazon. *Id.* at 1. Defendant Warren claimed that conspiracy theories, vaccine misinformation, and "false cures" related to COVID-19, like those allegedly contained in the books the letter identified, "have

led to untold illnesses and deaths." *Id.* at 2.

Defendant Warren's letter concluded by "ask[ing] [Amazon to] perform an immediate review of [its] algorithms and, within 14 days, provide both a public report . . . and a plan to modify these algorithms." *Id.* at 5. The letter also asked Amazon to respond to four questions about its search algorithms and "Best Seller" labels, so that Sen. Warren could "fully understand Amazon's role in facilitating misinformation about COVID-19 and its actions to address the issue." *Id.* at 5-6.

On September 8, 2021, one day after Defendant Warren sent her letter to Amazon, the letter was published in an official press release from Defendant Warren's office. Dkt. 7 at 7. According to Plaintiffs, the letter was "widely publicized in the national media." *Id.* at 8. Two days later, on September 10, 2021, Barnes & Noble notified Chelsea Green by email of its "editorial decision" to stop selling *The Truth About COVID-19*.[1] Dkt. 8 ¶ 38 & Exh. B. Although Amazon continued to sell the book, Plaintiffs claim that their analysis of Amazon's website indicates that the company is "covertly demoting, downgrading, or otherwise suppressing *The Truth About COVID-19*" without informing Plaintiffs. *See id.* ¶¶ 38-42. Plaintiffs also allege that "[m]ost if not all independent booksellers are refusing to sell [their book.]" *Id.* ¶ 43.

On December 9, 2021, Plaintiffs moved for a preliminary injunction requiring Defendant Warren to publicly retract her letter and enjoining her from sending any similar letters in the future. Dkt. 7-1. On January 10, 2022, Defendant Warren filed a response together with a cross-motion

---

[1] The Barnes & Noble email specifically referred to the ebook version of *The Truth About COVID-19*. Dkt. 8, Exh. B. It is not clear whether the book is or was available in paperback and, if so, whether that version was also affected by Barnes & Noble's decision.

3

for summary judgment on Plaintiffs' claims against Defendant in her official capacity. Dkt. 30. On March 8, 2022, Defendant Warren filed a motion to dismiss Plaintiffs' claims against Defendant in her individual capacity. Dkt. 41. This order addresses only Plaintiffs' motion for a preliminary injunction.

### III.   LEGAL STANDARDS

#### A. Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis omitted). The party seeking a preliminary injunction must show (1) a likelihood of success on the merits, (2) irreparable injury, (3) the balance of equities favors an injunction, and (4) an injunction is in the public interest.[2] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24-25 (2008).

#### B. Standing

In her opposition to Plaintiffs' motion, Defendant Warren challenges Plaintiffs' standing to bring this lawsuit. Article III standing is required to invoke the jurisdiction of federal courts. *Lopez v. Candael*, 630 F.3d 775, 785 (9th Cir. 2010). Standing is a threshold matter and must be considered before the court reaches the merits of a plaintiff's suit. *LA Alliance for Human Rights*

---

[2] Although the merits element is typically the most important, the Ninth Circuit permits the application of an alternative standard that reduces the showing required for that element if the other elements tip sharply in favor of an injunction. See Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Rather than a "likelihood of success," this alternative standard requires only "serious questions going to the merits." Id. at 1135. "Serious questions" are those that are "substantial, difficult and doubtful, requiring more thorough investigation." Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988).

*v. County of Los Angeles*, 14 F.4th 947, 956 (9th Cir. 2021). The three elements of standing are: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "At the preliminary injunction stage, the plaintiffs 'must make a clear showing of each element of standing.'" *LA Alliance*, 14 F.4th at 956 (quoting *Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020)). Nevertheless, "[j]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional" and appropriate only where "the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted).

Challenges to standing may be "facial" or "factual." *Id.* "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* In a factual attack, "the challenger disputes the truth of the allegations" that purportedly establish standing. *Id.* To resolve a factual dispute, "the district court may review evidence beyond the complaint" and "need not presume the truthfulness of the plaintiff's allegations." *Id.* If a defendant submits affidavits or other evidence undermining the facts needed to establish jurisdiction, the plaintiff must respond with its own affidavits to carry its burden on standing. *Id.*

## IV.   DISCUSSION

### A. Standing

The parties primarily dispute the causation element of standing. Defendant Warren argues that Plaintiffs lack standing because the primary injury they claim—the suppression of their

freedom of expression—was caused by the actions of independent third parties; namely, booksellers like Amazon and Barnes & Noble that stopped selling or promoting Plaintiffs' book. Dkt. 30 at 13-15. Defendant Warren contends that Plaintiffs have failed to demonstrate that Defendant's letter caused the booksellers' actions. Dkt. 30 at 15.

Plaintiffs reply that they are not required to prove that Defendant Warren's letter caused the booksellers' actions. Dkt. 34 at 3. Relying on the Seventh Circuit's decision in *Backpage.com*, Plaintiffs contend that "when an official writes a letter unconstitutionally threatening a third party with legal liability for continued distribution of a plaintiff's speech, the communication is actionable, and may be enjoined, regardless of any additional consequences." *Id.* (citing *Backpage.com v. Dart*, 807 F.3d 229 (7th Cir. 2015)). Furthermore, Plaintiffs claim that there were in fact additional consequences in this case, citing Barnes & Nobles' decision to pull *The Truth About COVID-19* two days after Defendant Warren's letter was published. *Id.* at 3-4. According to Plaintiffs, this "close temporal proximity . . . is more than sufficient" at this stage of the proceedings. *Id.* at 4.

Defendant Warren's standing argument is effectively a factual attack. She argues that the Court need not assume Plaintiffs' causation allegations are true and highlights apparent deficiencies in Plaintiffs' declaration. *See* Dkt. 30 at 13-15. Specifically, Defendant Warren notes that the letter from Barnes & Noble informing Plaintiffs that the bookseller would no longer carry Plaintiffs' book cited the company's "content policies" and did not mention Defendant's letter or other outside pressure. *See id.* at 14; Dkt. 8, Exh. B. Additionally, during oral argument, defense counsel claimed that Amazon had responded to Defendant Warren's letter and indicated that the company would continue to sell Plaintiffs' book. However, Amazon's response is not in the

6

record.

The Court finds that it cannot resolve the parties' factual dispute over causation at this stage. "[A] [j]urisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of the action." *Safe Air*, 373 F.3d at 1039 (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)).

Here, the parties have a genuine factual dispute over how various third-party booksellers reacted to Defendant Warren's letter and whether the letter contributed to the booksellers' actions. These facts go directly to whether Defendant Warren's letter violated Plaintiffs' First Amendment rights. Making findings of fact to determine standing would be inappropriate at this preliminary stage. The record before the Court is incomplete, and established Supreme Court precedent strongly disfavors "jurisdictional dismissals in cases premised on federal-question jurisdiction" on an inadequate record. *Safe Air*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 140 (citing *Bell v. Hood*, 327 U.S. 678 (1946))). Accordingly, the Court will presume standing for the purpose of ruling on Plaintiffs' motion for a preliminary injunction and resolve the parties' factual dispute when the record is complete.

**B. Preliminary Injunction Motion**

    **1. Likelihood of Success on the Merits**

To succeed on the merits of their claims, Plaintiffs must show that Defendant Warren's letter acted as an unconstitutional restriction on speech protected by the First Amendment. Plaintiffs argue their claims are likely to succeed under the Supreme Court's *Bantam Books* decision. *Bantam Books v. Sullivan*, 372 U.S. 58 (1963).

In that case, the Rhode Island legislature had created a commission to police obscenity in publications "tending to the corruption of the youth" pursuant to an existing statute prohibiting such obscenity. *Id.* at 59-61. The commission was empowered "to investigate and recommend the prosecution of all violations of said [statute]." *Id.* at 60-61. The commission itself did not have the power to prosecute violators. *See id.* at 66-67. Instead, the commission's practice was to identify books it found objectionable and inform the distributors of those books via a written notice. *Id.* at 61-63. The notice "thanked [the bookseller], in advance, for his 'cooperation' . . . usually reminding [him] of the Commission's duty to recommend to the Attorney General prosecution of purveyors of obscenity." *Id.* at 62. Additionally, the commission's list of objectionable publications was "circulated to local police departments, and [the bookseller] was so informed in the notices." *Id.* at 62-63. This "invariably" led to "police visitations." *Id.* at 68.

The Supreme Court found that the commission's "informal censorship"—using the threat of legal sanctions to coerce booksellers into removing obscene books—was unconstitutional because it effectively bypassed "the safeguards of the criminal process." *Id.* at 67-70. The Court noted that "[p]eople do not lightly regard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around." *Id.* at 68. The force of the commission's threats essentially deemed booksellers' guilty of circulating obscene material without having to prosecute them. *Id.*

The Court finds that *Bantam Books* bears little resemblance to the case before it. Unlike *Bantam Books*, this case involves no regulatory body, no criminal statute, and no threat of police or other enforcement. Plaintiffs will have serious difficulty establishing that a letter from a single United States Senator is akin to a statutorily created system of prior administrative restraints whose

"capacity for suppression of constitutionally protected publications is far in excess of that of the typical licensing scheme." *Id.* at 71.

First, the "thinly veiled threats" in *Bantam Books* were *very* thinly veiled. The commission's notices were "phrased virtually as orders" and made explicit reference to the attorney general, the police, and the possibility of criminal prosecution. *Id.* at 67-68. Here, Defendant Warren's alleged threat is derived primarily from her statements that the circulation of *The Truth About COVID-19* was "potentially unlawful" and that COVID-19 misinformation has "led to untold illnesses and death." Dkt. 8, Exh. A, at 1-2; *see* Dkt. 7 at 10-17. Plaintiffs argue that booksellers could interpret these statements as threatening them with "legal liability for wrongful death or homicide." Plaintiffs will have difficulty establishing that this is a reasonable or likely interpretation of Defendant Warren's letter. The two noted phrases are not in the same paragraph and, even if they were, equating them to an accusation of homicide requires a vivid imagination. Furthermore, the vast majority of Defendant Warren's letter is dedicated to persuasion—by arguing, for example, that "[o]ther major technology companies have recognized their role in propagating misinformation" and, unlike Amazon, taken steps to address it. Dk.8, Exh. A, at 5.

Next, Defendant Warren is far removed from the power to legally punish booksellers for continuing to sell *The Truth About COVID-19*. Although Plaintiffs are correct that "the fact that a public-official defendant lacks direct regulatory or decisionmaking authority over a plaintiff [or third-party publisher] . . . is not necessarily dispositive," that does not mean it will not be dispositive in most cases. Dkt. 7 at 11 (citing *Backpage.com*, 807 F.3d at 230).

In *Bantam Books*, the Court found that the commission's "want of power to apply formal

9

legal sanctions" was not dispositive because the commission effectively wielded that power (and perhaps even greater power) informally. *Bantam Books*, 372 U.S. at 69 ("The Commission's operation is a form of effective state regulation superimposed upon the State's criminal regulation of obscenity and making such regulation largely unnecessary."). Here, it is difficult to maintain that Defendant Warren's writing a letter to Amazon is effectively wielding state regulatory power, in part because there is no such power to wield. In *Bantam Books*, the commission was given an express mandate by the legislature, and its threats were backed up by a statute criminalizing obscenity. *Id.* at 59-61. In contrast, Defendant Warren does not have any unilateral investigative authority,[3] and there is no immediate statutory basis for her statement that Amazon's practices are "potentially unlawful."

Put another way, the threat of legal sanctions can act as an unlawful restriction on speech, but a threat will only be perceived as such if there is a realistic chance the threatened action can be carried out. Plaintiffs are unlikely to successfully demonstrate that the booksellers reasonably perceived Defendant Warren's letter as a threat. *Cf. id.* at 68 ("The Commission's notices [were] phrased virtually as orders [and] reasonably understood to be such by the distributor . . . .").

In summary, the Court finds that Plaintiffs are unlikely to succeed on the merits of their claim that Defendant Warren's letter constitutes a prior restraint on speech.[4]

**2. Irreparable Harm and the Balance of Equities**

---

[3] It also has not been alleged that Defendant Warren is a member of any committee that might have the jurisdiction to subpoena Amazon or other booksellers in this context.

[4] Even under the Ninth Circuit standard that allows preliminary injunctions to proceed if there are "serious questions going to the merits," Plaintiffs have failed to make the required showing.

10

To establish irreparable harm, plaintiffs must show that absent a preliminary injunction, they will continue to suffer harm (and, indeed, harm that cannot be compensated by money damages). Plaintiffs have failed to establish this.

Plaintiffs seek two remedies—first, that no further letters be issued by Defendant Warren. Nowhere in their motion have Plaintiffs even hypnotized that this is likely to occur. Indeed, Defendant Warren sent her letter to Amazon in September 2021, and there is no allegation that she has so much as mentioned Plaintiffs' book since then.

Second, Plaintiffs' proposed preliminary injunction would force Defendant Warren to publicly retract her letter. There is nothing "preliminary" about this remedy. Ordering Defendant Warren to retract her letter would effectively be a permanent injunction, because it cannot be undone. This injunction would not relieve Plaintiffs of irreparable harm, but rather impose it on Defendant Warren. Furthermore, to be entitled to a retraction, Plaintiffs would need to have actually *prevailed* on the merits—not just shown they are likely to prevail (which they also have not done). Thus, the Court finds that Plaintiffs have failed to establish that, in the absence of preliminary injunction, they will suffer irreparable harm, and the balance of equities disfavors a remedy that would irreparably harm Defendant Warren.

### 3. Public Interest

In this case, granting a preliminary injunction is not in the public's interest. Injunctions requiring positive action—as opposed to those ordering a party to cease ongoing action—are rare and generally disfavored. *See Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). Issuing one on a preliminary basis in this case would be highly inappropriate. The public has an interest in courts' thoroughly examining the merits of a case before issuing sweeping orders

compelling specific actions.

Accordingly, the Court is persuaded that Plaintiffs have failed to meet the requirements for a preliminary injunction, and therefore denies their motion.

### V.     CONCLUSION

For the foregoing reasons, the Court hereby denies Plaintiffs' motion for a preliminary injunction (Dkt. 7).

DATED this 9th day of May, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE