HONORABLE BARBARA J. ROTHSTEIN

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON**

|  |  |
|---|---|
| ROBERT F. KENNEDY, JR., a citizen of New York, JOSEPH MERCOLA, M.D., a citizen of Florida, RONALD CUMMINS, a citizen of Minnesota, and CHELSEA GREEN PUBLISHING, INC., a Vermont Corporation,<br><br>      Plaintiffs,<br><br>v.<br><br>U.S. Senator ELIZABETH WARREN,<br><br>      Defendant. | No. 21-cv-01508-BJR<br><br>DEFENDANT SENATOR ELIZABETH WARREN'S MOTION TO DISMISS PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS PURSUANT TO FRCP 12(b)(6) |

This Court previously struck Defendant U.S. Senator Elizabeth Warren's motion to dismiss Plaintiffs' claims for failure to state a claim upon which relief may be granted, with leave to refile after the Ninth Circuit resolved Plaintiffs' appeal of the Court's denial of Plaintiffs' preliminary injunction motion. Dkt. 54. The Ninth Circuit issued an opinion affirming the Court's denial of that motion, in which it held that Plaintiffs have not raised a "serious question on the merits of their First Amendment claim." Dkt. 55 at 11. Following a conferral with Plaintiffs' counsel on July 12, 2023, and pursuant to the Court's July 17, 2023 order, Dkt. 58, Senator Warren accordingly renews her motion to dismiss the claims brought against her in her individual capacity for failure to state a claim upon which relief can be granted.[1] The Court should dismiss Plaintiffs' claims with prejudice because (1) a *Bivens* remedy is not available for Plaintiffs' claims; and (2) Senator Warren is entitled to qualified immunity because (a) her letter to Amazon about COVID-19 misinformation cannot plausibly amount to a First Amendment violation; and (b) any rights purportedly violated were not clearly established.

## I.       FACTUAL ALLEGATIONS

Senator Warren sent a letter to Amazon's Chief Executive Officer on September 7, 2021 raising concerns about Amazon's role in disseminating misinformation about COVID-19 vaccines and treatment and requesting information about Amazon's practices that promote the spread of such information. Dkt. 1 ¶ 7. Senator Warren also published the letter on her website. *Id*. ¶ 14. The letter "nam[ed] certain books" as examples of books with COVID-19 misinformation, including Plaintiffs' book, *The Truth About COVID-19: Exposing the Great Reset, Lockdowns, Vaccine*

---

[1] Separate counsel from the Department of Justice represents Senator Warren in her official capacity. The Court granted a motion to file separate Rule 12 motions on July 17, 2023. Dkt. 58.

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS (NO. 21-CV-01508-BJR) - 1

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

*Passports, and the New Normal* and cited sources refuting this misinformation.[2] Senator Warren characterized Amazon's favorable treatment of Plaintiffs' and other books as "peddling misinformation" as part of a "pattern and practice of misbehavior" that amounted to "an unethical, unacceptable, and potentially unlawful course of action." Ex. A at 1. She expressed her view that COVID-19 misinformation has "led to untold illnesses and deaths." *Id.* at 2. Senator Warren asked that Amazon "perform an immediate review of [its] algorithms and, within 14 days, provide both a public report on the extent to which Amazon's algorithms are directing consumers to books and other products containing COVID-19 misinformation and a plan to modify these algorithms so that they no longer do so." *Id.* at 5. She also asked several questions about Amazon's search algorithms and "Best Seller" labels. *Id*. Senator Warren did not state that Amazon would face any consequences for inaction. *Id.*

Plaintiffs allege that Senator Warren's letter caused certain booksellers to suppress their book, and that it chilled their speech and harmed their reputation. Plaintiffs recognize that "it is impossible for Plaintiffs to know with certainty whether, as a result of Senator Warren's letter" Amazon is suppressing or otherwise demoting their book, but nevertheless speculatively allege "that Amazon is in fact covertly taking such action." Dkt. 1 ¶ 17. Although Plaintiffs allege that "*as a direct result* of Senator Warren's letter" to Amazon, a *different* bookseller, Barnes & Noble, notified the book's publisher by email that it would no longer sell an e-book version, Plaintiffs make no credible factual assertions that, if proven, would link this decision to Senator Warren's letter—or even indicate that Barnes & Noble was aware of such letter. *Id*. ¶ 15 (emphasis added).

---

[2] Plaintiffs quote, and thereby incorporate, Senator Warren's letter into their Complaint. Exhibit A to the Declaration of Ben Stafford ("Ex. A"); *see also* Letter from Sen. Elizabeth Warren to Amazon CEO, (Sep. 7, 2021), available at https://www.warren.senate.gov/imo/media/doc/2021.9.7%20Letter%20to%20Amazon%20on%20COVID%20Misinformation.pdf (last visited July 31, 2023); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("When ruling on a Rule 12(b)(6) motion . . . [a] court may [] consider certain materials … [such as] documents incorporated by reference in the complaint, or matters of judicial notice").

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

## II.     PROCEDURAL HISTORY

Plaintiffs assert claims against the Senator in her individual and official capacities, alleging her letter violated the First Amendment and deprived Plaintiffs of rights and privileges under the U.S. Constitution. *Id*. ¶¶ 90-110. Plaintiffs seek injunctive relief against the Senator in her official capacity and damages in her personal capacity. *See id*., p.17. Plaintiffs also filed a motion for injunctive relief against Senator Warren "in her official capacity" only. Dkt. 7, p. 1. Senator Warren opposed the motion and filed cross-motions seeking dismissal. Dkt. 30, 41.

This Court denied Plaintiffs' motion for preliminary injunction. Dkt. 49. In doing so, it rejected Plaintiffs' "argu[ment that] their claims are likely to succeed under the Supreme Court's *Bantam Books* decision." *Id*. at 7 (citing *Bantam Books v. Sullivan*, 372 U.S. 58 (1963)). The Court distinguished the letters in *Bantam Books* that were "phrased virtually as orders" from Senator Warren's letter "dedicated to persuasion." *Id*. at 9. This Court also noted that Senator Warren is "far removed from the power to legally punish booksellers for continuing to sell *The Truth About COVID-19*." *Id*. at 9–10. "[I]n contrast" to the Commission in *Bantam Books*, this Court noted that "Defendant Warren does not have any unilateral investigative authority." *Id*. at 10.

Plaintiffs appealed and the Court subsequently struck Senator Warren's pending cross-motions "with leave to refile after the Ninth Circuit has ruled on Plaintiff's appeal," noting that the "outcome of the appeal may affect this Court's decision on Defendant's motions." Dkt. 54.

The Ninth Circuit unanimously affirmed the Court's denial of Plaintiffs' preliminary injunction motion. Dkt. 55 at 23, 26. In doing so, the Court of Appeals adopted a "useful . . . framework" from the Second Circuit, and—after applying it to this case—"agree[d] with the district court that Senator Warren's letter did not cross the constitutional line between persuasion and coercion." *Id*. at 12–13. Importantly, the Ninth Circuit concluded that "plaintiffs have not

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

raised a serious question as to whether Senator Warren's letter constituted an unlawful threat in violation of the First Amendment" because:

> [Senator Warren's] letter requested, but did not demand, that Amazon reevaluate its business practices regarding COVID-19 misinformation and report back any changes. The absence of a specific demand is unsurprising given that Senator Warren lacks direct regulatory authority over Amazon in this matter. There is no evidence that Amazon or any other bookseller perceived the letter as a threat, and the "potentially unlawful" language does not fundamentally alter the analysis because Senator Warren never stated or otherwise implied that there would be any adverse consequences if Amazon failed to comply with her request.

*Id*. at 22–23. Senator Warren now refiles a motion to dismiss all individual capacity claims.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To plead a viable claim, the allegations must transcend the "speculative," "conceivable," and "plausible" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57, 566–67, 570 (2007). The Court must disregard "legal conclusions" and "conclusory statements" and must scrutinize factual allegations to ensure that they are more than "'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

### IV.   AUTHORITY AND ARGUMENT

**A.   Plaintiffs fail to state a claim upon which relief may be granted.**

Plaintiffs fail to plead a plausible First Amendment claim for relief. But the Court need not even reach the merits to dismiss the individual capacity claims. Plaintiffs' *Bivens* action is not cognizable. Regardless, Senator Warren is entitled to qualified immunity: She would not have reasonably understood that her letter would violate any clearly established constitutional right.

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1.    **There is no *Bivens* remedy available for Plaintiffs' claims.**

Claims against federal officers for violations of constitutional rights have only been recognized in certain contexts. In support of their First Amendment *Bivens* claim Plaintiffs cite *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021), *see* Dkt. 1 ¶ 107, but that decision was subsequently overruled by the Supreme Court. *See Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). In rejecting the availability of a *Bivens* remedy for the First Amendment injuries at issue in *Boule*, 142 S. Ct. at 1807, the Supreme Court explained that in *Bivens* actions, courts must "frame[] the inquiry as proceeding in two steps." First, the court must consider "whether the case presents a new *Bivens* context" including, for example, "a new category of defendants." *Id.* (quotations and citations omitted). If the case presents a new context, the court must then ask if there are special factors counseling against recognition of a *Bivens* remedy. *Id.* Here, Plaintiffs assert a never-before-recognized context for a *Bivens* claim against a sitting United States Senator exercising her own free speech rights. Special factors strongly counsel against extending *Bivens* to expand to encompass this new claim, including the critical and unique context of the COVID-19 pandemic and danger of public health misinformation.

In short, because Plaintiffs have not pled a cognizable *Bivens* action, and there is no basis to recognize a new *Bivens* context here, their claim fails at the outset.

2.    **Senator Warren is entitled to qualified immunity.**

Regardless, Senator Warren is entitled to qualified immunity. Qualified immunity is properly raised through a 12(b)(6) motion because "the entitlement is an *immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Federal officials receive qualified immunity when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

U.S. 223, 231 (2009) (quotation omitted); *Butz v. Economou*, 438 U.S. 478, 507 (1978). In analyzing qualified immunity, the Court examines "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct." *Saved Mag. v. Spokane Police Dep't*, 19 F.4th 1193, 1198 (9th Cir. 2021) (quotation omitted). The Court has discretion to decide which of the two prongs "should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, Plaintiffs' claim fails both prongs. They have not pled a plausible claim for a First Amendment violation. Even if they had, any such claim is plainly not "clearly established."

### a.    Plaintiffs fail to plausibly allege a First Amendment violation.

Senator Warren's letter was an appropriate exercise of her First Amendment right to speech, and the unanimous panel correctly rejected the merits of Plaintiffs' contrary First Amendment claim. As the Ninth Circuit put it, "our system of government requires that elected officials be able to express their views and rally support for their positions," which "includes allowing politicians to forcefully criticize other speakers and the platforms that carry their messages." Dkt. 55 at 13. To reach its decision, the court adopted a framework examining:

> (1) the government official's word choice and tone; (2) whether the official has regulatory authority over the conduct at issue; (3) whether the recipient perceived the message as a threat; and (4) whether the communication refers to any adverse consequences if the recipient refuses to comply.

*Id.* at 13 (citing *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 715 (2d Cir. 2022)). The Ninth Circuit determined that all four factors cut *against* finding that Senator Warren violated Plaintiffs' First Amendment rights. *Id.* This Court should find the same and grant dismissal.[3]

---

[3] In a single paragraph, Plaintiffs allege viewpoint discrimination. Dkt. 1, ¶ 94. Because Senator Warren has not "imposed . . . prohibitions" of Plaintiffs' viewpoint, Plaintiffs "ha[ve] failed to allege a colorable viewpoint discrimination claim." *Am. Fam. Ass'n, Inc. v. City & Cnty. of S. F.,* 277 F.3d 1114, 1125 (9th Cir. 2002).

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

1

2

3
**(1)    Senator Warren's word choice and tone were persuasive, not coercive.**

4
        The first factor asks the Court to consider word choice and tone. The Ninth Circuit

5
identified several reasons that Senator Warren's word choice and tone in the letter are properly

6
understood as persuasive and not coercive, including that the letter "was still framed as a request

7
rather than a command and is thus distinguishable from the communications at issue in *Bantam*

8
*Books*." Dkt. 55 at 14. In *Bantam Books*, the Commission informed obscenity distributors that it

9
had given their names to the police and would refer non-cooperators to the Attorney General for

10
prosecution. 372 U.S. at 62, 68. Here, Senator Warren's language was direct and included "strong

11
rhetoric" but never "suggest[ed] that compliance was the only realistic option to avoid government

12
sanction." Dkt. 55 at 13–14. As the Ninth Circuit noted, *Bantam Books* prohibits *coercion,* not

13
elected officials forcefully and persuasively presenting their views. *Id.* at 13.

14
        The Ninth Circuit also rejected Plaintiffs' argument that the words "potentially unlawful"

15
changed the tenor of Senator Warren's letter. After "read[ing] the phrase . . . in context," the court

16
concluded "potentially unlawful" "most likely" referred to Amazon's "sale of inappropriate

17
products"—another topic Senator Warren raised in the letter and wrote Amazon about

18
previously—and not Plaintiffs' book. *Id.* at 15; *see also id.* at 25 (Bennett, J., concurring)

19
("Considering the totality of the circumstances, the letter did not accuse Amazon of specific

20
unlawful conduct related to selling *The Truth About COVID-19* or other books"). But even

21
adopting Plaintiffs' reading of the letter, the Ninth Circuit agreed with its sister circuit that

22
"referencing potential legal liability does not morph an effort to persuade into an attempt to

23
coerce." *Id.* at 15 (citing *VDARE Found. v. City of Colorado Springs*, 11 F.4th 1151, 1165 (10th

24
Cir. 2021)). Instead, a "First Amendment problem arises only if the official intimates that she will

use her authority to turn the government's coercive power against the target if it does not change

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 7

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

its ways," and here, "[n]either the 'potentially unlawful' language nor the letter's reference to past

FDA investigations into Dr. Mercola's commercial enterprises suggests that Senator Warren

planned to punish Amazon if it continued to promote the plaintiffs' book." *Id.* at 16.[4] Moreover,

unlike in *Bantam Books*, there is "no evidence that Senator Warren followed up on her letter in

any fashion" with further communication or police action. *Id*. at 17.

The Ninth Circuit ultimately held that the "words on the page and the tone of the interaction

[] suggest that the letter was intended and received as nothing more than an attempt to persuade."

*Id.* Its thorough analysis and the relevant case law support the same conclusion here.[5]

### (2)    Senator Warren lacks direct regulatory authority over Amazon.

For the second factor, this Court should consider "whether the government official has

regulatory authority over the recipient in the relevant policy area." Dkt. 55 at 17. The Ninth Circuit

found that this "factor weighs against finding impermissible coercion here" because "Warren, as

a single Senator, has no unilateral power to penalize Amazon for promoting *The Truth About*

*COVID-19*." *Id.*; *see also id*. at 25 (Bennett, J., concurring) ("Senator Warren lacked the authority

to unilaterally impose direct sanctions"). The court noted that the "absence of authority influences

how a reasonable person would read [Senator Warren's] letter," and that "as one member of a

legislature who is removed from the relevant levers of power, Senator Warren would more

---

[4] The Ninth Circuit also found that the "absence of a clear allegation of legal violations or threat of specific enforcement actions distinguishes this case from *Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015)"—a case "on which the plaintiffs heavily rely." Dkt. 55 at 16.

[5] *See, e.g.*, *Am. Fam. Ass'n*, 277 F.3d at 1125 (affirming dismissal of free speech claim where city officials criticized anti-gay speech and adopted resolutions urging television stations not to air it because there was "no sanction or threat of sanction" for noncompliance); *VDARE*, 11 F.4th at 1172, *cert. denied sub nom. Vdare Found. v. Colo. Springs*, No. 21-933, 2022 WL 585900 (U.S. Feb. 28, 2022) (affirming motion to dismiss and distinguishing *Bantam Books* because "nothing in the [Defendant's] Statement was plausibly a threat, order, mandate, or exercise of control over a private entity's decision-making process"); *R.C. Maxwell*, 735 F.2d at 86 (finding no First Amendment violation where officials wrote a letter to the lessor of a billboard space "firmly suggest[ing] that Citibank remove the unsightly billboards" and mentioning "the pending billboard ordinance, and the possibility that Citibank might find itself subject to legal proceedings if the billboards remained where they stood").

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 8

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

1  naturally be viewed as relying on her persuasive authority rather than on the coercive power of the

2  government to take action against Amazon." Dkt. 55 at 17–18; *see also id.* at 18, n.1 (rejecting

3  argument that Senator Warren's Senate Finance Committee membership "make[s] it any more

4  likely that she could cajole the relevant authorities to punish Amazon"). The court distinguished

5  directives sent by prosecutors or law enforcement with power to bring enforcement actions from

6  Senator Warren's authority as a single Senator "backed by no statutory mandate." *Id.* at 17–18.[6]

7  This Court should similarly find that Senator Warren's lack of direct, unilateral regulatory

8  authority over Amazon "weighs against finding impermissible coercion." *Id*. at 17.

### (3)    Amazon did not perceive the letter as a threat.

10  For the third factor, the Court considers how the recipient understood the communication.

11  As the Ninth Circuit noted, courts "are more likely to find impermissible coercion if there is some

12  indication that the recipient of the message understood it as a threat." Dkt. 55 at 19 (citing *Rattner*

13  *v. Netburn*, 930 F.2d 204, 210 (2d Cir. 1991)). The Ninth Circuit correctly found that with "respect

14  to Amazon, there is no evidence that the company changed its algorithms in response to Senator

15  Warren's letter, let alone that it felt compelled to do so." *Id*.

16  The Ninth Circuit called the fact that Amazon did not advertise *The Truth About COVID-*

17  *19* "unilluminating because no evidence suggests that Amazon ever advertised plaintiffs' book

18  before receiving the letter," and "it is far more likely that Amazon's decision not to advertise the

19  plaintiffs' book was a response to widespread concerns about the spread of COVID-19

20  misinformation rather than a response to Senator Warren's letter." *Id.* (citing *Ass'n of Am.*

21  *Physicians & Surgeons, Inc. v. Schiff*, 23 F.4th 1028, 1034–35 (D.C. Cir. 2022)). With respect to

---

[6] *Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.,* 827 F.2d 1291, 1296 (9th Cir. 1987) (deputy county attorney violated First Amendment by threatening prosecution of a telephone company if it continued to carry salacious dial-a-message service); *Backpage.com,* 807 F.3d at 230 (county sheriff violated First Amendment with letters to credit card companies to stop processing payments on adult websites).

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 9

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

Barnes & Noble, the Ninth Circuit found that even assuming the company removed Plaintiffs' e-book in response to Senator Warren's letter, "it is unlikely that the letter did so by way of coercion" because Senator Warren's letter only critiqued *Amazon's* algorithm and book labels. *Id*. at 20. It was "more likely" that Barnes & Noble assessed its own policies in response to Senator Warren's concerns or that it feared public backlash, and "[e]ither of these effects is consistent with an elected official's permissible attempts to shape public discourse and change market practices." *Id*.

The complaint contains no well-pled facts to the contrary. In fact, Amazon responded to Senator Warren's letter, answered her information requests, and stated that it "continue[s] to list the books in question." Ex. A.[7] Plaintiffs have thus failed to plausibly assert that Amazon perceived Senator Warren's letter as a threat, cutting against finding of unlawful coercion.

### (4)   Senator Warren did not threaten consequences for non-compliance.

The fourth factor—"whether the official's communication refers to adverse consequences that will follow if the recipient does not accede to the request"—is arguably "most important" to this Court's analysis. Dkt. 55 at 20. The Ninth Circuit held "Senator Warren's silence on adverse consequences supports the view that she sought to pressure Amazon by calling attention to an important issue and mobilizing public sentiment, not by leveling threats." *Id*.

The court distinguished Senator Warren's letter from the "direct threat of prosecution" in *Carlin*, 827 F.2d at 1296; the "thinly veiled threats to institute criminal proceedings" in *Bantam Books*; and the contacting of federal authorities in *Backpage.com*, 807 F.3d at 237. Dkt. 55 at 21. Here, "by contrast, it is hard to fathom what the unspoken 'or else' would be" because Senator

---

[7] By offering assertions about how Amazon responded to Senator Warren's letter (*see, e.g.*, Dkt. 1 ¶¶ 17, 82) Plaintiffs' Complaint necessarily incorporates Amazon's response. *See* Exhibit B to the Declaration of Ben Stafford; *see also* Charlotte Schubert, *COVID-19 misinformation still featured on Amazon, months after inquiries from lawmakers*, Geekwire (Dec. 14, 2021, 10:04 AM), https://www.geekwire.com/2021/covid-19-conspiracy-books-still-featured-on-amazon-months-after-inquiries-from-lawmakers/.

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 10

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

Warren's letter "contains no explicit" or implied "reference to any repercussions Amazon would suffer." *Id.* The Ninth Circuit agreed with this Court that reading Senator Warren's letter to accuse Amazon criminal liability for homicide "requires a vivid imagination." *Id.* It also rejected Plaintiffs' attempts to distinguish the *American Family* case as unpersuasive, as the letter in that case also included a "powerful and permissive form of denunciation" of "moral[] complicit[ity] in causing deaths" but the Ninth Circuit did not find it to be a coercive accusation "of being an accomplice to homicide." *Id.* at 21–22 (citing *Am. Family*, 277 F.3d at 1119).

Like the Ninth Circuit, this Court should conclude that this "most important factor," along with all others, weighs against finding that Senator Warren's letter violated Plaintiffs' First Amendment rights. Again, Plaintiffs must present *plausible* claims for relief—not ones that require the imagination of a Da Vinci to articulate.

In sum, Plaintiffs have failed to plead a plausible First Amendment claim. As a result, qualified immunity applies, requiring dismissal of these claims.

### b.   Any alleged First Amendment violation is not "clearly established."

Even if Plaintiffs had plausibly asserted a First Amendment violation, it would not be "clearly established." Plaintiffs cannot "rely on abstract formulations of First Amendment law that define their rights 'at a high level of generality'" to escape a finding of qualified immunity. *Saved Mag.*, 19 F.4th at 1199 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)). Instead, the "clearly established law [inquiry] must be particularized to the facts of the case." *Id.* The law needs to give Senator Warren "fair notice that her conduct was unlawful." *Kisela*, 138 S. Ct. at 1152.

No case provides that notice, and "existing precedent" certainly has not "placed the . . . constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Even in cases with factual similarities to *Bantam Books*, courts have granted qualified immunity where an

officer could have reasonably believed their action would not be viewed as a threat.[8] The dissimilarity of *Bantam Books* and unprecedented COVID-19 pandemic context should prohibit a finding that Senator Warren violated Plaintiffs' "clearly established" rights.[9] That fact that the Ninth Circuit panel in this case held that Plaintiffs failed to prevent even a "serious question" of First Amendment liability puts the matter beyond all dispute. Dkt. 55 at 22.

## V.   CONCLUSION

For the reasons set forth above, Senator Warren respectfully requests that the Court dismiss Plaintiffs' claims against her in her individual capacity in their entirety with prejudice.

Dated: August 1, 2023

s/ Ben Stafford
William B. Stafford
WSBA No. 39849
Lindsay McAleer
WSBA No. 49833
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176
(206) 656-0235
BStafford@elias.law
LMcAleer@elias.law

---

[8] In *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007), for example, the Second Circuit held that "because *Bantam Books* [and another case] present examples of threats that are more direct on their face than those defendants used here, these cases were not 'closely analogous' enough to the circumstances here to give the defendants' fair warning of the illegality of their actions." *Id.* Similarly, in *Playboy Enterprises, Inc. v. Meese*, 746 F. Supp. 154, 160 (D.D.C. 1990), *aff'd sub nom. Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991), the district court there held that "[w]hile the facts in *Bantam* are similar to those in the instant case, *Bantam* can be distinguished from this case based on several crucial facts" so granting qualified immunity was warranted. *Id.*

[9] *See, e.g.*, *Mader v. Union Twp.*, No. 2:20-CV-01138-CCW, 2021 WL 3852072, at *7 (W.D. Pa. Aug. 27, 2021) (finding qualified immunity because the "question whether the government could limit First Amendment rights . . . given the ongoing COVID-19 pandemic was not clearly established"); *Northland Baptist Church of St. Paul v. Walz*, 530 F. Supp. 3d 790, 807 (D. Minn. 2021) ("[T]he existence of an ongoing pandemic does not eradicate constitutional rights. But when assessing the facts as they appeared to state actors, ignoring this unprecedented context would result in defining constitutional rights with an excessive degree of generality" (citation omitted)); *Pleasant View Baptist Church v. Beshear*, No. 220CV00166GFVTCJS, 2021 WL 4496386, at *8 (E.D. Ky. Sept. 30, 2021) ("courts across the country have addressed qualified immunity for government officials at the 12(b)(6) stage regarding Covid-19 measures and found government officials to be immune from suit in their personal capacities").

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 12

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

Elisabeth C. Frost*
Melinda K. Johnson*
**Elias Law Group LLP**
250 Massachusetts Avenue NW
Suite 400
Washington, DC 20001
(202) 968-4513
(202) 968-4674
EFrost@elias.law
MJohnson@elias.law

*Admitted pro hac vice*

*Attorneys for Defendant Senator Elizabeth Warren in her individual capacity*

DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CAPACITY CLAIMS
(NO. 21-CV-01508-BJR) - 13

ELIAS LAW GROUP LLP
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176

**CERTIFICATE OF SERVICE**

I, William B. Stafford, certify under penalty of perjury that on August 1, 2023, a copy of

the foregoing was sent via the Court's electronic filing system to the following**:**

Nathan J. Arnold, WSBA #45356
Nathan@CAJLawyers.com
R. Bruce Johnston, WSBA #4646
Bruce@rbrucejohnston.com
ARNOLD & JACOBOWITZ, PLLC
2701 First Avenue, Suite 200
Seattle, WA 98121

Jed Rubenfeld
rubenfeldjed@gmail.com
YALE LAW SCHOOL
127 Wall Street
New Haven, CT 06511

**By: s/ *Ben Stafford***
William B. Stafford
WSBA No. 39849
**Elias Law Group LLP**
1700 Seventh Ave, Suite 2100
Seattle, WA 98101
(206) 656-0176
BStafford@elias.law

CERTIFICATE OF SERVICE
(NO. 21-CV-01508-BJR) - 1